CHARLES G. PEASE as Executor, etc., Appellant, *v.* CLARA M. EGAN, Individually and as Executrix, etc., Respondent.

No contract is necessary upon which to base a right of subrogation; it is founded upon general equitable principles, and may be asserted by one who has no absolute interest in property, but who, upon the happening of a contingency, may become the owner, and who in order to save the property pays a debt which is a lien thereon.

The will of E. devised his real estate to his executors in trust, to pay one-third of the net income to the wife of the testator and the remainder to the maintenance of his children, until the youngest should reach the age of twenty-one and until the real estate should be sold. Any surplus of income arising during the minority of the children, to be invested, accumulated and paid to them upon their reaching the age of twenty-one, together with all the testator's personal property, with an exception specified. Upon the death of the wife and the attainment by the youngest child of the age of twenty-one, the executors were directed to sell the real estate and divide the proceeds between the children. If a child died without issue during the wife's life or before the sale and distribution of the estate, the share of the decedent was to go to the surviving child or children and the issue of any deceased child. E. left him surviving his widow and two children. He died seized of certain real estate, upon which was a mortgage, which fell due after both children became of age. There being no provision and no other funds to pay it and the value of real estate being much depressed so that it could not be sold without great loss, the widow, who was sole executrix, with the consent of both children, applied sufficient of the personal estate to its payment and it was satisfied of record. Subsequent to its payment the widow filed her accounts, as executrix, in which she was credited with the amount so paid, which account was passed with the assent of the children. M., one of the children, died without issue during the life of the widow. In an action by the executor and sole beneficiary under the will of the deceased child, to be subrogated to the right of the original mortgagee, and for a foreclosure of the mortgage, *held*, that plaintiff was entitled to the relief sought; that while the children, on their arrival of age, owned the personalty absolutely, their interest in the real estate was contingent, and when the personalty was taken to pay the mortgage it was not a payment of a debt of M.

in her character of devisee, as she might not and in fact did not become such devisee; that while her interest in the realty was contingent only, she had a right to protect it; that the consent to the use of the personalty for the payment of the mortgage, was to be regarded the same as a voluntary payment by her to protect her contingent interest and the law implied a condition attendant upon such payment that in case it should result that she had no interest in the mortgaged property, she should have one-half of the mortgage, as security for repayment; that the fact that the contingency was the death of M., was immaterial, as her estate was as much entitled to the right of subrogation as she would have been had her contingent interest terminated on the happening of some other event.

But *held,* that in case a foreclosure sale should not realize sufficient to pay the full amount paid in discharge of the mortgage, with interest, a *pro rata* reduction should be made and plaintiff would be entitled only to one-half the sum realized.

(Argued January 27, 1892; decided March 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 26, 1891, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was for subrogation to and foreclosure of a mortgage upon certain real estate.

John Egan, a resident of the city of New York, died on the 1st day of May, 1875, leaving him surviving his widow, Clara M. Egan, one of the defendants herein, and two children, Clara E. and William G. Egan. He left a will, which was duly admitted to probate, and letters testamentary issued thereon to the widow. At the time of his decease he was the owner of a house and lot in the city of New York, which was subject to a mortgage made by the testator and his wife to secure the payment of $18,000. The mortgage became due on the 23d day of April, 1877. The son of the testator was born in 1851 and the daughter in 1855, and hence were at the time of the death of their father twenty-four and twenty years of age respectively, and when the mortgage became due both had attained their majority.

By the terms of the will the real estate of the testator was

devised to his executor in trust to rent the same, and after the payment of taxes, assessments and necessary repairs and expenses, to pay one-third of the remaining income to the wife of the testator, and to apply the residue to the maintenance and education of his children (after deducting a small annuity to be paid to his sister) until the youngest should attain the age of twenty-one, and until the real estate should be sold as thereinafter directed. If there were a surplus of· this portion of the income from the real estate arising during the minority of his children after their support and education were provided for, it was to be invested and accumulated for them and paid to them upon their reaching the age of twenty-one, *together with all the personal property owned by the testator and not included in a small bequest to his wife.* Upon the death of his wife and the attainment by his youngest child of the age of twenty-one years, the executors were directed to sell and convey the real estate and give the proceeds equally to his children. If all his children attained the age of twenty-one years before the death of his wife, his executors were invested with power to sell the real estate before her death, provided she should consent thereto, and she and her children should make some satisfactory arrangement securing to her the payment of an annuity equal in value to the portion of the rents and income of the realty already directed to be paid her in lieu of dower.

If any of his children died before the time appointed for the sale and distribution of his real estate and should have legal issue, such issue was to take its parents' share.

If any child died without issue during his wife's life or before the sale and distribution of his estate should have been made, and should leave a brother or sister or the issue of a brother or sister surviving him or her, then such share of the child so dying was to go to the surviving brother or sister and the issue of any deceased brother or sister.

These are all the provisions of the will which are material here. When the mortgage became due in May, 1877, the widow, with the consent of both children, applied $18,000 of

the personal property left by the testator, to the payment of the mortgage which was thereupon satisfied of record.

Subsequent to the payment of the mortgage the widow filed an account of her proceedings as executrix with the surrogate, which contained a statement of the payment of the mortgage with the personal estate to the extent of the $18,000, and she asked credit therefor in her account. The son and daughter consented to the passing of the account and signed a written consent and waiver of further notice. After the decree of the surrogate establishing such account the daughter married the plaintiff and then made a motion to open the decree, which was denied. The court found there was no evidence that the daughter did not consent to the decree with full knowledge of the contents of her father's will in regard to her interest in his estate. The daughter subsequently died without issue, leaving a will by which she gave all her property to the plaintiff, her husband, and named him executor. The will was duly proved and letters testamentary issued thereon to the plaintiff. At the time of the daughter's death she left her brother surviving her. The plaintiff after the death of his wife commenced this action against the widow and the son of the testator Egan and asked that the original mortgage for $18,000 upon the premises owned by the testator at the time of his death might be foreclosed and the premises sold and the moneys arising from such sale might be brought into court and the plaintiff paid thereout the sum of $9,000 and interest from May 1, 1883. The plaintiff, in effect, asked to be subrogated to the right of the original mortgagee before the payment of the mortgage, which in equity should be regarded as assigned to him as executor of his wife by the mortgagee.

After the commencement of this action the son died leaving a widow and one child. He left a will, of which his widow was named executrix, and the same was proved and letters duly issued thereon to her. The child was an infant under the age of fourteen years. Upon supplemental complaint the son's widow and child were made parties to the action and they came in and defended the same, the infant by her guardian

*ad litem,* who submitted her rights and interests to the protection of the court.

Further facts are stated in the opinion.

*Richard L. Sweezy* for appellant. The conclusion of law found by the learned justice that "under the terms of the will of the said John Egan, there was but one fund in the hands of the executrix," if it means that the personalty and realty together constituted but one fund in the hands of the executrix, is erroneous. (*Vincent* v. *Newhouse*, 83 N. Y. 505; *Savage* v. *Burnham*, 17 id. 569; *Townshend* v. *Frommer*, 125 id. 446; *Delafield* v. *Barlow*, 107 id. 535.) It is very clear that if under the will of John Egan, the interest of his daughter as one of the devisees in the realty was contingent or liable to be divested by her death, and her interest as legatee in the personalty was absolute, our statute applies, and as between the devisees and legatees, the mortgage was payable out of the land and not out of the personal estate. (*Halsey* v. *Read*, 9 Paige, 446.) Plaintiff's testatrix was entitled to pay off the mortgage for the protection of her interest in the land, and her money having been used for that purpose, plaintiff, as her executor, is entitled to be subrogated to the said mortgage as against her co-devisees to the extent to which her money was used in paying off the same, to wit, nine thousand dollars and interest. (*Cole* v. *Malcolm*, 66 N. Y. 366; *Arnold* v. *Green*, 116 id. 566; Story's Eq. Juris. § 486; *S. L. Bank* v. *North*, 4 Johns. Ch. 370; *Hyde* v. *Farmer*, 1 Barb. 75; *Barnes* v. *Mott*, 64 N. Y. 401; *Gaus* v. *Thieme*, 93 id. 225; *Robinson* v. *Ryan*, 25 N. Y. 327; *Twombly* v. *Cassidy*, 82 id. 37; *Schnelling* v. *McIntyre*, 6 Abb. [N. C.] 473; *Clute* v. *Emerich*, 99 N. Y. 342; *Clute* v. *E. I. S. Bank*, 12 N. Y. Supp. 148; *Stinson* v. *Anderson*, 96 Ill. 373.) The plaintiff's right to subrogation may be based upon the well-established rules applicable to principal and surety. (*Wright* v. *Holbrook*, 32 N. Y. 587.) If the General Term were correct in its assumption that certain allegations of the complaint should have been established by proof, which was not offered, it nevertheless erred in affirm-

ing upon that ground a judgment which dismissed the complaint upon the merits, thus barring a new action. (Code Civ. Pro. § 500.) The surrogate's decree, approving the accounts of the executrix, is no adjudication against the right of plaintiff to recover in this action. (Code Civ. Pro. § 2742.) Where a witness is dead, his or her testimony, given upon a previous trial or hearing between the same persons, although not in the same identical action, is admissible. (*Hall* v. *Bennett*, 16 J. & S. 302 ; *Moorehouse* v. *Moorehouse*, 17 Abb. [N. C.] 407 ; 41 Hun, 146.)

*Amasa A. Redfield* for respondent. The plaintiff was properly denied the relief asked for, because he failed to show any facts upon which a court of equity could, under well-settled rules, apply the equitable doctrine of subrogation. (*Arnold* v. *Green*, 116 N. Y. 566.)

PECKHAM, J. The plaintiff's complaint has been dismissed in the courts below for the reason, as stated, that no case for subrogation had been made out, although the Special and General Terms arrived at this result by different and, to some extent, opposing views as to the construction of the testator's will. We think the construction adopted by the General Term is the true one. The children under this will took an absolute title to the personal property of the testator (excepting a small portion bequeathed to the widow) upon their reaching the age of twenty-one years. This was not the case with the real estate. After the children arrived at the age of twenty-one years, the trustee was authorized to sell, provided the widow consented and an arrangement could be agreed upon respecting the payment of an annuity. This worked no equitable conversion of realty into personalty until an actual sale took place. None did take place. The title to the real estate remained in the trustee until it should be sold, and if a child died without issue before the death of the mother and before any sale, the share which would otherwise have gone to such child or its issue upon the mother's death and the sub-

sequent sale and distribution of the proceeds of the real estate, went to the surviving brother or sister.

The sister did die in the life-time of the mother, without issue and before any sale or distribution of the proceeds of the real estate. The share of the sister in such realty or its proceeds, upon her death without issue, passed to her brother by virtue of the will of the testator. Upon these facts the rights of the parties must be determined. At the time when the mortgage for $18,000 was paid by the widow and executrix from the personal estate left by the testator, the son and daughter having arrived at the age of twenty-one years, were the absolute owners of that estate. The money was taken from that estate by their mother, the executrix, with their knowledge and consent and for the purpose of paying the mortgage on the real property. It is a fact that was admitted upon the trial of the action that the condition of the real estate market in 1877 (the time when the mortgage was paid) was such that real property could not be disposed of except at great loss. In the answer of the adult defendants, it was admitted that it was represented to the daughter before the mortgage was paid that it was necessary to pay the same in order to preserve the property covered thereby, and that it was necessary and to the advantage of all parties interested that the mortgage should be paid out of the personal estate of the testator, as in no other way could funds .for such purpose be obtained.

Inasmuch as there was an infant defendant who could make no admissions, the General Term thought the facts thus admitted by the adult defendants could not be regarded for any purpose in the consideration of the case. Assuming this to be correct we still have the fact that the mortgage was due and from the terms of the will it is apparent there were no funds provided thereby from which to pay it. The condition of the real estate market was then such that real property could not be disposed of except at great loss. The interest of both children in the personal estate was that of absolute ownership, while at the same time each had but a contingent interest in the real estate.

It is plain enough from these facts as we think, that there was a necessity of raising money to pay this mortgage and that there were no funds for this purpose unless they were to come from the personal estate left by the testator. It is, therefore, true that a necessity existed to preserve the estate upon which the mortgage was a lien and that the only way of doing it was the way which was pursued. The burden of paying this mortgage was by the terms of our statute laid upon the devisee of the realty. (1 R. S. 749, § 4.) Whether the daughter was the devisee of a portion of the realty (or its proceeds as representing the realty), was not certain at the time when the payment of the mortgage was to be made. If she lived she would, at some future time, be entitled to a half of the realty or its proceeds, but no one could say that she was, when the money was paid, entitled as devisee, for she was not. When she paid her share it could not be said she was paying her own debt in her character of devisee of the property mortgaged. She might or she might not be such devisee. Yet, notwithstanding this conditional state of affairs, it is still claimed that the devisees of the realty and the legatees of the personalty are the same, and hence when the personal estate was taken to pay the mortgage it was only the taking from one fund instead of another, both of which were owned by the same individuals, and for the purpose of paying a debt for the payment of which, so far as funds came to their hands from the testator, both were equally bound. This argument overlooks the contingent nature of the devise, and, therefore, overlooks the fact that neither child could at that time have been described as a devisee. The estate had absolutely vested in neither, and although it was but a contingent interest, yet each child had the right to protect it. When an encumbrance upon the realty became due and there was danger of a sacrifice or destruction of the estate by a sale thereof under the mortgage, each had the right to devote his or her property to the payment of the mortgage and the preservation of an estate which at the time neither certainly owned but which might become theirs at some future time. A payment by either child while the

contingency existed, or an equal payment by both must be regarded as having been made with respect to the conditional character of the interest each had and with a right to be placed in the position of the original creditor, if it should subsequently appear that the payment of either had been made for the preservation of an estate or an interest therein which never could be his or hers.

We can regard the consent of the son and daughter to the use of this personal property by the mother for the purpose of the payment of the mortgage, as of no more materiality than the voluntary use of their own property by the son and daughter for the purpose of making such payment.

If a voluntary payment under the facts of this case would be no bar to the maintenance of this action, we see nothing constituting a defense in the fact that the daughter consented to such use by the mother. Of course the consent thus given operated as a justification to the mother to use the personal estate for the payment of the mortgage, and no attempt is now made to undo the consequences of such consent so far as she is concerned. The decree of the surrogate founded upon that consent is a perfect bar to any proceedings against the mother by reason of her use of this property. Upon the question involved in this case, she must be considered as the agent of the daughter, applying the property of the latter with her consent to the payment of this mortgage, and making this application for the purpose of thereby protecting a contingent interest of the daughter in the property and saving it from destruction. In this view it may be conceded the daughter had perfect knowledge of the contents of her father's will at the time she consented to this application of the personal estate to the payment of the mortgage, and it may be conceded she knew she had only a contingent interest in the real estate encumbered.

We think upon these facts this action can be maintained. I do not think the daughter occupied the position of a mere volunteer in thus assenting to the payment of this mortgage, for I think there is proof enough in this record of a necessity

for her intervention for the preservation of the estate by means of the payment of such mortgage or some part thereof. She could not of course tell at the time of the payment whether her contingent would ever ripen into an absolute interest in the realty or its proceeds, but she certainly was not compelled to take the risk of either allowing a sale and consequent loss of the property under this encumbrance, or of paying a portion or all of it and losing it all upon the happening of the contingency which would terminate her interest. No rule of law would compel such an alternative. If not, then it seems to me the law would clearly imply a condition attendant upon her payment of the encumbrance or any part thereof, that in case it should turn out she had no interest in the property thus encumbered, she should have as a security for the repayment of her money, the mortgage which she paid, at least to the extent necessary to enable her to obtain such repayment. The fact that in this particular case the contingency did not occur until the death of the daughter, does not make any difference with the rule. The contingency might have been founded upon any other future event. The estate of the daughter is as much entitled to the right as the daughter would have been had her contingent interest terminated upon the happening of some event other than her death at a certain time.

Every principle of equity would seem to call for the enforcement of this right in this case. One-half of the mortgage upon the real estate in which as it turns out the daughter had no interest, has been paid with the property of the daughter, and the real estate, freed from this encumbrance, partly by means of the appropriation of the daughter's property to pay the same, goes to the son and his heirs, and if this right of subrogation is not recognized, they may enjoy the fruits of property a large portion of which was purchased and paid for with the money of another. As the facts have actually happened the daughter was not responsible for the payment of any portion of the mortgage and yet she paid one-half of it. I think the principles to be extracted from the adjudged cases are sufficiently broad and explict to permit and demand this

right. No contract is necessary upon which to base the right, for it is founded upon principles of equity and benevolence and may be decreed where no contract exists. (*Cottrell's Appeal*, 23 Penn. St. 294.)

The daughter in fact has discharged a debt against another and in the discharge did not act as a mere volunteer. This gives a right of subrogation. (Id.) The fact that if she had had an absolute interest in the property as devisee she would have been bound to pay the mortgage to the exoneration of the testator's personal estate, does not make the mortgage debt her own. Whether she had any interest in its payment was based upon whether she was a devisee of the realty and that was based upon a contingency which had not yet occurred, and when she paid the mortgage or some part thereof she took the chance of paying a debt for which she was not responsible in order to preserve an estate, her interest in which was contingent. When the contingency subsequently occurred which proved that she had no interest in the property which she had aided in preserving, justice demanded that her estate which has thus suffered should be treated as if it had paid the debt of another.

It was said by Chief Justice MARSHALL that equity would clothe the party thus paying with the legal garb with which the contract he has discharged was invested, and it would substitute the party paying to every equitable interest and purpose, in the place of the creditor whose debt he has discharged. (*Lidderdale's Exrs.* v. *Robinson's Admr.*, 2 Brockenbrough, 159, 168.) This was said in relation to a surety in the particular case reported, but the principle is entirely applicable to a case like this.

In *Cole* v. *Malcolm* (66 N. Y. 363), the doctrine was laid down by EARL, J., that the right of subrogation applies where a party is compelled to pay the debt of a third person to protect his own rights or to save his own property.

I think precisely the same principle applies, if instead of the property being his own absolutely, there is a contingency upon which it may be his, and he desires to protect it, and, therefore, pays the debt.

In the cases of *Gans* v. *Thieme* (93 N. Y. 225), and *Arnold* v. *Green* (116 id. 566), while not particularly in point here, are yet evidences of the rule that no contract need subsist upon which to base the right of subrogation and that it is a remedy which equity seizes upon in order to accomplish what is just and fair as between the parties, where the party seeking the aid of the court and the benefit of the rule, has been no mere volunteer and where his action is based upon general equitable rules which it is the peculiar province of a court of equity to enforce.

We think, therefore, that the plaintiff should succeed in his claim for subrogation to the rights of the mortgagee. As to the right of the plaintiff to recover the amount of the payment of $9,000, with interest, as prayed for, such right must depend upon the amount for which the mortgaged premises shall sell at the foreclosure sale to be decreed. It must be remembered that when the mortgage was paid the brother and sister contributed each one-half of the amount necessary to pay it, and that both of them then had but the same contingent interest in the realty or its proceeds. If the sale under the foreclosure should not realize enough to repay the advances each made, treating them as creditors, then each must abate *pro rata.* The result of this would be that in order to permit the plaintiff to recover the full amount paid and interest as asked for, the premises must sell for twice that sum, and otherwise the *pro rata* deduction must be made. This is fair and equitable, and as the plaintiff comes into a court of equity and asks relief, he must submit himself to one of the plainest principles in that court, and if he seek equity he must do equity.

We think the judgment of the General and Special Terms should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.