SAM LEVIN, Plaintiff, *v.* JOSEPH J. SCHICKLER, Defendant.

Supreme Court, New York County, March 18 1935.

*M. Carl Levine*, for the plaintiff.
*Sherman, Ribman & Goldring*, for the defendant.

COLLINS, J. The plaintiff, who paid a promissory note which he had indorsed, seeks contribution from a coindorser.

The plaintiff was the treasurer and the defendant the president of the 295 Washington Avenue, Inc. On May 23, 1927, the corporation, through these two officers, made its note to its own order for $10,500. After the two indorsed, the indorsement of the plaintiff preceding that of the defendant, the note was discounted by the Seventh National Bank of New York. The maker defaulted and the plaintiff discharged the obligation. This suit followed, wherein the plaintiff is in quest of one-half of the amount he paid.

At the juryless trial the plaintiff was the sole witness, and he was not cross-examined. The defendant relies upon the inadequacy of the plaintiff's testimony to meet the *prima facie* order of liability prescribed by section 118 of the Negotiable Instruments Law, which provides: " Order in which indorsers are liable: As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise."

The single question which the case presents is whether these parties " agreed otherwise."

The scanty evidence indicates that these two officers had previously indorsed notes for the corporation. The talk at the time this particular note was indorsed " was the same as the conversation on all of the notes, that we were both responsible for them. * * * At the time we were making the notes, the other officer of the company who was Mr. Rubenstein was then a member or a director of the Seventh National Bank with whom we were doing business and he did not want to become an endorser of these notes on account of that particular connection. I said, ' Joe,—' that's Mr. Schickler, ' Joe, listen, you know that we are both signing these notes. We are responsible for them.' He says, ' I realize that. I am no baby.' I said, ' All right; we will have to leave Rubenstein off because of his connection with the bank.' That's all there was to it."

Later the plaintiff told the defendant " that the note was coming due and it would have to be paid and what he proposed to do about it. He said he had no money, he couldn't do anything about it. I said, ' You know, the bank will start an action against us for this money.' He says, ' I cannot help it, I have not got it.' I says, ' Listen, I cannot afford to have any judgments taken against me. And I said, ' If you don't pay it I will have to pay it.' That is where it stood. He said he had no money; and when they sent me this notice, before it went into action, I paid it because I did not want any judgment against me."

After the plaintiff paid the note he demanded of the defendant that he contribute his share, saying, " Here, Joe, all I have got in this operation is a quarter interest and you have a half interest and I am satisfied to split this here in half with you so that you won't have to pay more than I. But he said he had no money, he couldn't give me anything."

The defendant insists that this testimony does not have " the effect of qualifying, altering or * * * inverting the relative liabilities which the law-merchant would otherwise assign to them." (*Macdonald* v. *Whitfield*, [L. R.] 8 App. Cas. 733, 744.)

The examination of the plaintiff might have been more searching and revealing. But the testimony, considered in relation to the situation of the parties, seems to me sufficient to sustain an agreement " between * * * themselves," that they be jointly and equally and simultaneously liable.

True, the parties did not speak in terms of section 118 of the Negotiable Instruments Law, and it is probable that they dealt with one another without regard to that section. It is rudimentary to say that an agreement need not be in any particular form; indeed, it may be implied from the circumstances. An intention may be resolved from a relationship. An agreement may be inferred from a status. Implications spring from situations. One fact established may impel another fact or a conclusion. Facts beget facts. Reasonable inferences which proceed from established facts constitute evidence. A fact cannot be removed from its setting. A composite view must be taken.

" It is sufficient if the surrounding circumstances indicate that the indorsements were made upon the understanding that all the indorsers should participate in the liability." (*George* v. *Bacon*, 138 App. Div. 208.)

In that case the court added: " The significant circumstance in the present case is that all of the indorsers were engaged in a common enterprise; that the money to be raised on the note was for the furtherance of that enterprise, and, so far as appears, that one indorser was as much interested in the enterprise, and as much to to be benefited by raising the money, as was any other. It is likewise a very significant circumstance, as bearing upon the mutual obligations of the indorsers to each other, that all the indorsements were put on the note before it was issued, and solely to give it credit with the bank, and that no indorser gained any profit or advantage from the note except such as was shared by all in the pursuit of the common enterprise."

The defendant asserts that testimony present in the *George* case to the effect that the indorsers were financially interested in " a

common enterprise " is absent here, and that this circumstance distinguishes the two cases. But from the premise that these parties were treasurer and president respectively of the corporation, it is to be deduced that they were financially or otherwise interested therein. That they were accommodation indorsers is evident. And if, as the plaintiff testified, he had " a quarter interest " " in this operation," whilst the defendant had " a half interest," it is a fair and reasonable assumption that that situation obtained at the time of the making and indorsement of the note. The defendant protests that there is no proof here that the proceeds of the discount were employed for the use and benefit of the corporation. But it must be presumed that the proceeds were utilized by the corporation and not by its officers. Neither owned or possessed the paper. (*Easterly* v. *Barber*, 66 N. Y. 433, 437.)

" There is no surer way to find out what parties meant than to see what they have done." (*Insurance Co.* v. *Dutcher*, 95 U. S. 269, 273.) This is but expressing the every day experience that " actions often speak louder than words." And not only do actions speak. Often silence is as significant as the spoken word. The defendant's failure to protest when the plaintiff spoke to him is strongly indicative of the defendant's assent and understanding that they were assuming a joint obligation for a common enterprise.

In *Strasburger* v. *Strasburger & Co., Inc.* (167 App. Div. 198) there was " no evidence of any *express* agreement." Yet the court found an agreement in the circumstance that the parties had become " accommodation indorsers, with a view to protecting their financial interests " in a corporation.

I conclude, therefore, that an agreement here may be drawn from what was said between the parties, as well as from the relation of the parties to the maker and to each other, and from their joint interest in a common enterprise.

The mere unpreciseness of the language employed by the plaintiff in his talks with the defendant does not make for inadequacy or ineffectualness. He used the idiom of a business man concerning a subject-matter which both understood and which did not command a waste or quantity of verbiage. The law does not make a fetish of particular words or invest them with magic. If an intention can be found, the circumstance that the particular words which the parties uttered to express the intention do not reside midst legal terminology does not result in fatality.

The defendant did not give his version of the transaction. He did not assign any reasons for immunity or present any explanation for burdening the plaintiff with the entire consequences of their joint act for a joint enterprise.

True, the defendant's indorsement appearing underneath that of the plaintiff, section 118 casts the burden on the plaintiff to overcome the *prima facie* order of liability by showing a contrary agreement. But it seems to me that the *prima facie* order was rebutted on the presentation of the fact that the indorsements were in furtherance of a common design, in which they were mutually interested. This factor is buttressed by the conversations between the parties which manifest an intent to protect a common enterprise at their joint risk.

Justice dictates that this plaintiff should not be burdened with the entire obligation; the burden should be equally apportioned between those equally interested and benefited. Accordingly, judgment is rendered against the defendant for $5,283.25 with interest from October 31, 1927, together with costs and disbursements. Thirty days' stay, sixty days to make a case allowed.