Daniel J. HALPERN and Nancy J. McDevitt, Plaintiffs,

v.

Philip M. ROSENBLOOM, Defendant.

No. 76 Civ. 1704 (CES).

United States District Court,
S. D. New York.

Nov. 8, 1978.

Monroe J. Korn, New York City, for plaintiffs.

Robert P. Herzog, New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiffs, Halpern and McDevitt bring this action seeking contribution from defendant Rosenbloom in the amount of $35,265 plus interest. The suit was originally brought in the Supreme Court, County of New York in March, 1976, but was removed to this Court by defendant pursuant to 28 U.S.C. § 1332. We have diversity jurisdiction. In his answering papers, defendant generally denies the allegations of plaintiffs, and asserts a number of affirmative defenses and counterclaims. By Notice of Motion, filed March 22, 1978, defendant moves for summary judgment on the issue of contribution alone. Plaintiffs have responded with a cross-motion for summary judgment in the amount of $35,265 plus

interest on the contribution issue or, in the alternative, dismissal of certain affirmative defenses and counterclaims raised by defendant.[1]

### I

We first address defendant's contention that plaintiffs' cross-motion should be dismissed without prejudice since it was served, not on May 18, 1978 as required, but on May 22, 1978, and their "Statement of Material Facts Under Local Rule 9(g)", which must accompany both a motion for and papers opposing summary judgment,[2] was not filed until May 26, 1978. Defendant neither requested that this Court grant him an extension of time in which to reply, which certainly would have been approved in light of plaintiffs' late service, nor does he explain why no such request was made. Moreover, defendant fails to show that he suffered any prejudice by reason of the late service, other than to say in conclusory fashion that he was not given "an appropriate time to respond".

We can find no convincing reason to further delay resolution of those matters which are ripe for consideration on motions to dismiss and for summary judgment. Certainly a small delay which caused no prejudice and which could have been easily remedied by a request for an extension is not enough to warrant dismissal of plaintiffs' cross-motion. We will, therefore, reach the issues presented.

### II

The undisputed facts which relate to defendant's motion for summary judgment and plaintiffs' cross-motion for similar relief are as follows. Halpern-McDevitt and Associates, Inc., formerly known as Halpern-McDevitt, Inc. (referred to herein as the "Corporation"), was a New York corpo-

---

1. Defendant, in his "Reply Memorandum in *Support of Motion for Summary Judgment*" filed May 30, 1978, does not dispute or even address any of plaintiffs' motions to dismiss the affirmative defenses and counterclaims, other than to say that plaintiffs' memorandum is "devoid of any case whatsoever" on the subject.

2. *See*: General Rules of the United States Courts, Southern and Eastern Districts of New York, Rule 9(g).

ration engaged in the advertising business. Both plaintiffs, Halpern and McDevitt, were officers and directors of the Corporation from its inception until on or about September 9, 1974. Halpern and McDevitt each executed and delivered to Chemical Bank separate agreements in writing dated June 21, 1971, guaranteeing the payment of all liabilities of the Corporation, then existing or thereafter incurred. Defendant, Rosenbloom, an employee of the Corporation, on or about November 19, 1973, also executed and delivered to Chemical Bank an agreement in writing guaranteeing payment of all liabilities of the Corporation, then existing or thereafter incurred. On August 27, 1974, the Corporation executed and delivered to Chemical Bank its promissory note in writing wherein it promised to pay to Chemical Bank on November 26, 1974, the sum of $100,000. This note was signed on behalf of the Corporation by Halpern, as president, and McDevitt, as secretary. On September 9, 1974, the Corporation made an assignment for the benefit of creditors, ceased doing business, and was unable to pay all or any part of the loan obligation of $100,000. On December 9, 1974, Chemical Bank, as plaintiff, filed an action against Halpern, McDevitt and Rosenbloom seeking judgment against them, based on their guaranties, for the sum due Chemical Bank on the note together with interest, attorneys' fees and costs. On March 5, 1975, the Supreme Court, New York County, entered an order permitting Chemical Bank to enter judgment against Halpern and McDevitt as upon a default and severing the action against Rosenbloom, who resided in New Jersey and had not received service. On September 11, 1975, Chemical Bank, as plaintiff, and Halpern and McDevitt, as defendants, executed a stipulation discontinuing the bank's action against Halpern and McDevitt as having been compromised and settled. This stipulation was filed with the Office of the Clerk of New York County on September 19, 1975. On September 16, 1975, a stipulation of discontinuance of the action between Chemical Bank, as plaintiff, and Rosenbloom, as defendant, was entered into. No judgment was ever obtained by Chemical Bank against either Halpern, McDevitt or Rosenbloom.

In March, 1976, Halpern and McDevitt, as plaintiffs, initiated this action against Rosenbloom alleging, *inter alia*, that on October 10, 1974, they paid to Chemical Bank the sum of $30,588.80 on the balance of the $100,000 loan, and on September 11, 1975, in connection with their stipulation of settlement, they paid to Chemical Bank the sum of $75,206.21. These two payments together discharged the $100,000 loan and the $5,795 interest accrued thereon. Plaintiffs alleged that these payments were made out of their personal property.[3] They seek contribution from defendant Rosenbloom, based on his guaranty, for one third of the $105,795 allegedly paid by them to Chemical Bank, or $35,265, together with interest from September 11, 1975 and costs.

Rosenbloom answered, denying most of the allegations and in his "Seventh Affirmative Defense" alleged that since the action by Chemical Bank against Halpern and McDevitt was settled, instead of going to judgment, "[s]aid settlement and release prior to judgment has forever barred the plaintiffs in this action from exercising any right of contribution or indemnification against defendant. . . ." Answer, ¶ 28. It is on this issue alone that defendant moves for summary judgment. Thus we are faced with the concise legal issue: under New York law does a guarantor who settles an action based on his guaranty of another's indebtedness which is in default (rather than allows a judgment to be entered against him in that action), forfeit his right to seek contribution of a proportionate share from a co-guarantor of the same indebtedness? This issue has been briefed by both parties.

---

**3.** There is some confusion in the papers as to exactly whose property was used to pay the bank. Naturally, if it can be shown that some of the assets used to discharge the liability were those of the Corporation, the claim against defendant would be reduced. This issue of fact, however, does not affect our present partial disposition of the case.

We have not found any New York cases directly on point. We therefore find it necessary to determine ourselves how the state courts would resolve this issue of first impression.

In New York, the right to contribution from a co-guarantor

. . . is founded upon the general principles of equity, that sureties in aequali jure must bear the common burden equally, under which the law implies a contract between them to contribute ratably toward discharging any liability which they may incur in behalf of their principal.[4]

*Hard v. Mingle*, 206 N.Y. 179, 99 N.E. 542, 544 (1912); *see also: Asylum of St. Vincent de Paul v. McGuire*, 239 N.Y. 375, 146 N.E. 632, 634 (1925); 10 N.Y.Jurisprudence, *Contribution* § 8 (1960). The right of action by one co-guarantor against another

. . . grows out of the original implied agreement, arising out of there being cosureties, that if one shall be compelled to pay the whole or a disproportionate part of the debt, for which both thus collaterally and provisionally stipulate to be liable, the other will pay such a sum as will make the common burden equal . . . .

*Hard v. Mingle*, 99 N.E. at 544. This disproportionate payment by one of the coguarantors of the debt, however, must not be voluntary. *Codling v. Paglia*, 38 A.D.2d 154, 161–162, 327 N.Y.S.2d 978, 986 (A.D.3 1972), *modified*, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973). There must exist a legal obligation to make the payment. *Yawger v. American Surety Co.*, 212 N.Y. 292, 106 N.E. 64, 66 (1914); *Pease v. Egan*, 131 N.Y. 262, 30 N.E. 102, 104 (1892); N.Y.Jurisprudence, *Contribution, supra* § 8 at 469–470; 18 Am.Jur.2d, *Contribution* § 11 (1965) at 24–25. There is no authority for defendant's contention that a payment is to be considered voluntary unless a judgment has been entered against the co-guar-

antor who made the payment and now seeks contribution. There is, however, authority to the contrary:

A voluntary payment which [an obligor] is not under legal obligation to make does not give a right of action against his co-obligors for contribution; but it is sufficient if the payment is made under a legal and fixed obligation. A payment is deemed in law to be compulsory when the party making it cannot legally resist it.

. . .

In general, a party to a common obligation is not, before an otherwise sufficient payment will entitle him to contribution, obliged to wait until his co-obligor requests payment to be made, nor is he obliged to wait until the obligee brings suit, secures judgment against him, procures an execution to issue, levies upon his goods, or otherwise extorts payment from him. A payment made for his own protection as soon as the obligation becomes due and the liability of the co-obligors is fixed is, in legal contemplation, compulsory and not voluntary.

Am.Jur.2d, *Contribution, supra* at 24–25. *See also*: N.Y.Jurisprudence, *Contribution, supra* at 470:

So long as one of the co-obligors remains liable for the principal debt, the liability of the other to contribute in the event he is compelled to pay continues, the only requirement being that the obligation at the time of payment be valid and subsisting as against the paying obligor.

We think that these rules are applicable to the present case and that they require the defendant to contribute his proportionate share of the liability discharged by plaintiffs. Defendant makes no argument that the plaintiffs' payment to Chemical Bank was voluntary, or otherwise less than a legal obligation to pay. No argument is made that plaintiffs would have had some

---

4. While we are sensitive to the distinctions between a guarantor and a surety (*see*: 38 Am.Jur.2d *Guaranty* §§ 14–16 (1968), we also note that the similarities between the two are considerable. In the context of the present case, we see no reason to distinguish those cases which relate to the contribution rights of co-sureties from those which deal with co-guarantors.

defense to an action on their guaranties. In fact, a suit was brought by the bank and an order was entered permitting Chemical Bank to enter judgment against plaintiffs as upon a default, though the action was settled rather than allow such judgment to be entered. Plaintiffs offer two persuasive reasons why a judgment was to be avoided. First, a judgment would have had an adverse impact on their ability to obtain credit in the future. At the same time, no money would have been saved nor other benefit received from such a judgment. Second, if plaintiffs hoped to resist the bank's suit, they would have incurred significant expense in attorneys' fees, both for their own attorneys and, by the terms of the guaranties, those retained by the bank. By avoiding needless litigation, not only did plaintiffs save themselves money, but the share attributable to defendant is also less than it would have otherwise been.

Defendant, on the other hand, offers no persuasive reasons why a judgment would have been preferable. On the facts of this case, where the legal obligation to pay is clear, where defendant has raised no allegations that the plaintiffs could have legally avoided payment, and where there is no allegation that the amount paid in settlement was excessive, we are convinced that the law of New York allows plaintiffs a right of action for contribution against defendant without the bank having obtained a judgment against any guarantor. We do not feel that the purposes of equity would be served if defendant, by the fortuitous circumstance of residing in New Jersey where service of process could not be obtained, is relieved of a clear liability to contribute his proportionate share of a common burden. Likewise, equity would not be served by holding that the entrance of an unnecessary judgment and the futile expenditure of attorneys' fees are required in order to preserve one's right to contribution from a co-guarantor.[5]

Defendant argues, however, that this case is controlled by statute, rather than case law, and that these statutes expressly prohibit an action for contribution by one who has settled with the obligee. Specifically, defendant points to N.Y. Civil Practice Law and Rules (CPLR) § 1401[6] and N.Y. General Obligations Law (GOL) § 15–108[7] as support for his proposition. We

**5.** We should also note that three New York cases have been discovered where contribution was obtained from a co-obligor by a party who had settled with the obligee. It appears, however, that the issue was never raised that by settling, the plaintiff precluded himself from receiving contribution. In *Levin v. Schickler*, 155 Misc. 372, 279 N.Y.S. 491 (S.Ct.N.Y.Co. 1935), plaintiff paid a promissory note which he had endorsed in order to avoid a judgment against him and then sought contribution from the coendorser. The Court held that plaintiff was entitled to contribution. In *Bernstein v. Liebowitz*, 38 Misc.2d 621, 237 N.Y.S.2d 662 (S.Ct.N.Y.Co.1963), plaintiff and defendant were coendorsers of a note made by a corporation in which they were principals. Plaintiff was sued on the note and settled by paying off the amount outstanding. The Court held that plaintiff was entitled to contribution from defendant. Finally, *Hard v. Mingle, supra*, appears to have allowed contribution even though the underlying claim was settled.

**6.** § 1401. Claim for contribution.

Except as provided in section 15–108 of the general obligations law, two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

**7.** § 15–108. Release or covenant not to sue.

(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.

(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.

cannot agree with the defendant's construction of these statutes.

■ As our starting point, we note that a statutory provision which purports to bar an equitable remedy (which contribution is, *see*: *Hard v. Mingle, supra*, 99 N.E. at 544) should receive a strict construction. *United States v. St. Paul M. & M. R. Co.*, 247 U.S. 310, 320, 38 S.Ct. 525, 62 L.Ed. 1130 (1918). We also note the well established rule that in the absence of some legislative declaration to the contrary, statutes in derogation of the common law should be strictly construed. *Thompson v. Thompson*, 218 U.S. 611, 618, 31 S.Ct. 111, 54 L.Ed. 1180 (1910).

The statutes here in question, CPLR § 1401 and GOL § 15–108, were passed by the legislature in 1974 following the New York Court of Appeal's decision in *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y. S.2d 382, 282 N.E.2d 288 (1972). That historic case overturned past tort law by holding that a tortfeasor may seek contribution from another tortfeasor without the need for a joint judgment against both wrongdoers. The purpose of CPLR § 1401 and GOL § 15–108 is both to codify the holding of *Dole* and to resolve certain problems created by that decision. Judicial Conference Report on the Civil Practice Law and Rules, 2 McKinney's Session Laws of New York 1803 (1974). One of the problems that surfaced in the wake of *Dole* was the question of the effect of a settlement on a tortfeasor's right to contribution. In *Blass v. Hennessey*, 44 A.D.2d 405, 355 N.Y.S.2d 506 (1974), a tortfeasor, A, had settled with plaintiff, P. P continued suit against B, a joint tortfeasor, who filed a cross-claim against A for contribution under *Dole*. The Court allowed the cross-claim. Naturally the prospect of being drawn back into the suit would chill A's desire to settle the case. Part of the purpose of these statutes, then, is to encourage settlements by relieving a settling tortfeasor from liability for contribution to any other tortfeasor. *See*: GOL § 15–108(b). The settling tortfeasor's peace

of mind, however, does not come without a price. GOL § 15–108(c) requires that a "tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." This is the specific language which defendant claims bars plaintiff's action for contribution in the present case.

The short answer to defendant's argument is that this language, by its very terms, applies to tortfeasors, not those in the contractual relationship of co-guarantors. Bearing in mind the principles of strict statutory construction noted above, we are hesitant to expand the word "tortfeasor" to include plaintiffs in the present case without some express declaration by the legislature in that direction. Defendant points to the Practice Commentary of CPLR § 1401 as support for his broad interpretation of the statutory language:

The caption of former CPLR 1401 provided for contribution "by one joint tortfeasor against another." The new section applies to persons subject to liability for the same harm. The Judicial Conference, at whose behest the statute was enacted, states that the intent was to expand the right of contribution to include not only joint tortfeasors, but also concurrent tortfeasors, successive and independent tortfeasors, and alternative tortfeasors. See 1974 Rep.Jud.Conf. to Legislature, McKinney's Sess. Laws 1805–06. Indeed, it should be noted, that nothing in the section requires that the liability of the defendants arise from tort. *The liability may be contractual* or may arise from a breach of warranty which lies somewhere in the mists dividing tort and contract law.

McKinney's Consolidated Laws of New York, CPLR § 1401 at 362 (emphasis supplied by defendant). Defendant's selective editing, however, omits the very next sentence of this same commentary: "All that is required for contribution is that two people be held liable for the same personal injury, property damage, or wrongful death." *Id.*

(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability

shall not be entitled to contribution from any other person.

Naturally, in the present case we are not concerned with liability for "personal injury, property damage, or wrongful death." The language emphasized by defendant merely points out that not all defendants in a personal injury, etc. case where contribution is sought need be liable for negligence or other tort, so long as their liability grows out of that personal injury, etc. *See e. g. Codling v. Paglia*, 32 N.Y.2d 330, 345 N.Y. S.2d 461, 298 N.E.2d 622 (1973) where defendant in a negligence case arising out of an automobile accident sought contribution from automobile manufacturer which was liable for breach of implied warranty of merchantability without any showing of negligence; *Taft v. Shaffer Trucking, Inc.*, 52 A.D.2d 255, 383 N.Y.S.2d 744 (A.D.4 1976) where plaintiffs, injured in an automobile accident, brought suit against defendant's insurer for fraud and misrepresentation and insurer sought contribution from plaintiffs' attorney on negligence theory. As emphasized in the Supplementary Practice Commentary, CPLR § 1401 "Although this section does not require that the defendants be liable on the same theory, it is essential that they be liable for the same *injury*." (at 14, emphasis in original). Thus it appears clear that defendant has misinterpreted the Practice Commentary insofar as he claims that it indicates that the underlying claim may be contractual rather than "personal injury, injury to property or wrongful death."

This restriction of the statute to traditional torts is also indicated by the language of GOL § 15–101 through § 15–110. Section 15–101 provides:

Definitions

In this title, unless otherwise expressly stated, "obligation" does not include a liability in tort; "obligor" does not include a person liable for a tort; "obligee" does not include a person having a right based on a tort. "Several obligors" means obligors severally bound for the same performance.

Sections 15–102 through 15–106 all use the term "obligor". Thus by virtue of § 15–101, *supra*, they do not include persons liable in tort. Section 15–108, relied on by defendant, speaks, not in terms of obligors, as do the other statutes, but in terms of "tortfeasors". In fact, § 15–108 is the only provision in the title which deals with tortfeasors. The necessary inference is that when the legislature, in a title that otherwise deals with obligors, used "tortfeasor" in § 15–108, their intention was to restrict the application of § 15–108 to tortfeasors in the traditional sense of the word. Judicial expansion of the term to include "obligors" would be unwarranted.

Finally, an examination of the available legislative history (2 McKinney's Session Laws 1803–1820 (1974)) discloses not even the slightest hint that the legislature contemplated that these statutes would apply to any but "personal injury, injury to property or wrongful death" actions. To hold to the contrary, we would need a much clearer indication of legislative intent. Absent that clear indication, we hold that defendant's argument based on CPLR § 1401 and GOL § 15–108 must fail. Defendant's motion for summary judgment is denied.

III

To deny defendant's motion for summary judgment, however, does not mean that we grant plaintiffs' cross-motion for summary judgment in the amount of $35,265 plus interest. In addition to various counterclaims, defendant has asserted certain affirmative defenses which if true would prevent a judgment in plaintiffs' favor. Several of defendant's affirmative defenses and one of his counterclaims, however, are presently susceptible to motions to dismiss. We now turn to those motions.

Defendant's First Affirmative Defense claims that plaintiffs' complaint fails to "set forth a claim in law or in equity upon which relief may be granted." Answer, ¶ 6. By denying defendant's motion for summary judgment we dispose of this defense as well. Therefore plaintiffs' motion to dismiss defendant's First Affirmative Defense is granted.

Defendant's Second Affirmative Defense claims that "plaintiff has failed to join Halpern McDevitt & Associates, Inc., and Chemical Bank as parties to this action, and in the absence of which complete relief cannot be accorded among the parties hereto." Answer, ¶ 8. Plaintiffs have moved to dismiss this count and defendant has not responded. We see no reason why Chemical Bank should have been joined. The bank has executed stipulations of settlement with all three parties to this present action and it has received payment in full on its loan. It cannot affect the present parties' rights of contribution. We also see no reason why plaintiffs should have joined the Corporation. While the Corporation might be a necessary party for some of defendant's claims (see e. g. First and Second Counterclaims) plaintiffs are not required to anticipate defendant's counterclaims and join all parties that may be necessary for defendant's benefit. Plaintiffs' motion to dismiss the Second Affirmative Defense is granted.

Defendant's Third Affirmative Defense alleges that his guaranty of the Corporation's indebtedness "was made by defendant without consideration of any kind or nature, and as such, is invalid and unenforceable." Answer, ¶ 10. Plaintiffs have moved to dismiss and defendant has not responded. As we have noted above, equity implies a contract between co-guarantors and an action for contribution is based on that contract. It would certainly be an incongruous result, however, if equity implied a contract that was unenforceable for lack of consideration. Therefore, at least as between the co-guarantors, no consideration is required to support an action for contribution.

As between Chemical Bank and defendant, we hold that there was adequate consideration. There is no dispute that defendant executed a guaranty of the Corporation's indebtedness to Chemical Bank on or about November 19, 1973. Neither is it disputed that on August 27, 1974, the Corporation executed and delivered to Chemical Bank its promissory note obligating it to pay on November 26, 1974, the sum of $100,000. It is this note which was in default and formed the basis of the bank's original action against the guarantors. It is this note which underlies plaintiffs' present action for contribution.

Under New York law, where the guaranty contemplates the accrual of future indebtedness, value moving from the creditor to the principal constitutes valid consideration, not only for a guaranty of future debts, but for a guaranty of past obligations as well. *Sun Oil Co. v. Heller,* 248 N.Y. 28, 161 N.E. 319, 320 (1928); *Briggs Lumber Co. v. Friedman,* 37 A.D.2d 786, 324 N.Y.S.2d 993, 995 (A.D.3 1971); *Gem Metal Specialties, Inc. v. Active Wire and Metal Products Corp.,* 198 N.Y.S.2d 528, 529 (Spec. Term Kings Co. 1960). Consistent with this approach, we find that defendant's guaranty of "all liabilities of the Borrower [the Corporation] to the Bank of whatever nature, whether now existing or hereafter incurred" contemplated the accrual of future indebtedness. That future indebtedness came in the form of the promissory note executed by the Corporation some ten months after defendant's guaranty. When the Corporation received value based on that note,[8] under New York law, defendant received valid consideration for his guaranty. No actual money or other benefit need be received by a guarantor. We therefore grant plaintiffs' motion to dismiss the Third Affirmative Defense.

Defendant's Fourth Affirmative Defense alleges that plaintiffs fraudulently induced defendant to execute the guaranty to Chemical Bank by promising to deliver to him a certain quantity of stock in the Corporation, which was never delivered. If

---

**8.** It appears from some of the papers that the Corporation executed the August 27, 1974 promissory note, not in return for a current loan of cash, but in order to extend the time for payment of a previous obligation. Whether this transaction is viewed as a new extension of credit, or merely an agreement by the bank to delay collection of a previously due and owing obligation, the result is the same—value was received by the Corporation so as to constitute valid consideration for defendant's guaranty.

proven, this allegation could constitute a valid defense to plaintiffs' action. Consequently we must deny plaintiffs' motion to dismiss the Fourth Affirmative Defense.

Defendant's Fifth Affirmative Defense/First Counterclaim and Sixth Affirmative Defense/Second Counterclaim allege various improprieties on plaintiffs' part in connection with their positions as trustees of a Dreyfus Pro-Type Profit Sharing Plan and Trust on behalf of the Corporation. No motion by plaintiffs has been made with respect to these counts.

Defendant's Seventh Affirmative Defense reiterates his motion for summary judgment on the grounds that no judgment was obtained by Chemical Bank against plaintiffs and, for that reason, plaintiffs are precluded from seeking contribution from defendant. Our disposition of defendant's summary judgment motion requires the dismissal of this affirmative defense.

■ Defendant's Eighth Affirmative Defense/Third Counterclaim (against McDevitt only) alleges that plaintiff McDevitt agreed to indemnify defendant against any liability which may have arisen from defendant's guaranty of the Corporation's indebtedness. It is not alleged that this agreement was in writing and signed by McDevitt, nor is the alleged agreement one of the many exhibits attached to the pleadings. Such an indemnification agreement is clearly "a special promise to answer for the debt, default or miscarriage of another person" within the meaning of N.Y. General Obligations Law § 5–701(a)(2) (McKinney 1978). Therefore, even if all of defendant's allegations are true, we must dismiss for failure to state a claim upon which relief can be granted. Plaintiffs' motion in this regard is granted.

■ Defendant's final count, his Fourth Counterclaim, alleges that plaintiffs entered into an agreement with defendant (annexed as an exhibit to the Answer) which permitted defendant to participate in any new business capital venture entered into by plaintiffs or their affiliates. Defendant alleges that profitable new ventures have been entered into, that he has not received notice of these ventures as required by the agreement, and that, as a result, he has suffered damages in the form of lost profits. Plaintiffs move to dismiss on the grounds that: (1) no consideration was embodied in the agreement or otherwise received; and (2) no new profitable business ventures have been entered into since date of agreement. Taking defendant's allegations as true, we cannot say that no claim is made out. We therefore deny plaintiffs' motion to dismiss the Fourth Counterclaim.

For the reasons stated above, defendant's motion and plaintiffs' cross-motion for summary judgment are both denied. Plaintiffs' motion to dismiss defendant's First, Second, Third, Seventh and Eighth Affirmative Defenses and defendant's Third Counterclaim is granted. Plaintiffs' motion to dismiss defendant's Fourth Affirmative Defense and Fourth Counterclaim is denied.

SO ORDERED.