JOHN F. YAWGER, as Receiver of the METROPOLITAN SURETY COMPANY, Respondent, *v.* AMERICAN SURETY COMPANY, Appellant.

Surety bonds — contribution — recovery against surety on bond of supervisor for his second term of office for default in payment of moneys collected during first and second terms — when contribution against surety on bond during first term may be enforced.

1. The supervisor and *ex-officio* treasurer of a town in a foreign state procured from the defendant a surety bond to secure the town from loss of any moneys that might come into his hands during his term of office. On his being re-elected for a second term he procured from the plaintiff's surety company a similar bond. During his first term of office he deposited moneys in a certain bank and at the time he qualified for his second term a large sum was supposed to be on deposit therein. During his second term he made additional deposits up to a time when the bank was adjudged bankrupt. In reality it was insolvent when the plaintiff's surety company signed its bond for the supervisor's second term. Thereafter the supervisor having failed to account for the moneys so deposited, the town brought its action, in the foreign state, upon said bond and recovered a judgment for the full amount. Plaintiff claims that the loss sustained during the first term should be borne by the two surety companies, and brings this action to enforce an equitable contribution, alleging in the complaint that the super-

visor "did not then nor thereafter withdraw from the said Lincoln Bank any of the aforesaid balance which he had on deposit * * * at the conclusion of his previous term of office, * * * nor could the said balance have been withdrawn on account of the insolvency of said private banking institution as herein set forth," and that he "did not and could not, on account of the aforesaid insolvency of the said private banking institution," pay over the said balance to himself as supervisor and treasurer. *Held*, that the complaint states a cause of action; that the supervisor and treasurer did not account for the town's moneys and pay them over to his successor by taking office a second time and giving a new bond; that to the extent of the loss suffered during the first term the defendant, as well as the second surety, was liable to the town, and that the second surety having discharged a debt for which the defendant was equally bound, is entitled, through the remedy of contribution, to enforce an equitable division.

. 2. A suggestion that even though the treasurer was unable to draw out the entire balance, he might, for all the complaint shows, have drawn out part of it, is something which bears not so much on the right of recovery as on its extent.

3. A contention that if the first surety was liable to the town for the deposits lost during the first term, the second surety, on a proper construction of its bond, was not; and that without identity of liability between sureties the right to contribution fails, is without force where the second surety in paying the loss was not a volunteer and discharged the defendant's liability, not officiously, but under compulsion of law, thereby bringing itself within the reason and the equity of the rule of contribution.

*Yawger* v. *American Surety Co.*, 156 App. Div. 504, affirmed.

(Argued June 1, 1914; decided July 14, 1914.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 2, 1913, which reversed an interlocutory judgment of Special Term sustaining a demurrer to the complaint and overruled such demurrer.

The following question was certified: "Does the complaint state facts sufficient to constitute a cause of action?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*Carl Ehlermann, Jr.,* for appellant. The complaint does not state facts sufficient to constitute a cause of action because the bond of the first year surety and the bond of the second year surety cover separate years and separate obligations, and, therefore, no matter when the loss occurred, the two sureties are not co-sureties. (*U. S.* v. *Eckford,* 1 How. [U. S.] 250; *Meyers* v. *Block,* 120 U. S. 206; *Farrar* v. *U. S.,* 5 Pet. 373.) The complaint does not state facts sufficient to constitute a cause of action because it appears conclusively that the breach occurred only under the bond of the second year surety. (*Oeltjen* v. *People,* 160 Ill. 409.)

*John Burlinson Coleman* and *Edward R. Finch* for respondent. The complaint states facts sufficient to constitute a cause of action. (*Barnes* v. *Cushing,* 168 N. Y. 542; *F. Nat. Bank* v. *Story,* 200 N. Y. 346; *Aspinwall* v. *Sacchi,* 57 N. Y. 331; *Schram* v. *Werner,* 85 Hun, 293; *National Surety Co.* v. *De Marsico,* 55 Misc. Rep. 302; *Kolb* v. *Nat. Surety Co.,* 176 N. Y. 233; *Armitage* v. *Pulver,* 37 N. Y. 494; *Kimball* v. *Williams,* 51 App. Div. 616; *Hard* v. *Mingle,* 141 App. Div. 170; 206 N. Y. 179; Frost on the Law of Guaranty Insurance [2d ed.], § 284.) The American Surety Company and the Metropolitan Surety Company are co-sureties in reference to the amount of the loss occurring during Grisko's first term of office. (*Morley* v. *Metamora,* 78 Ill. 394.) The complaint clearly shows a breach under the bond of the American Surety Company, and sets forth a good cause of action in favor of the town of Cicero against the American Surety Company on its bond, which bond and cause of action have been assigned to the plaintiff herein. (*Schram* v. *Werner,* 85 Hun, 293; *Kolb* v. *Nat. Surety Co.,* 176 N. Y. 233.)

CARDOZO, J. This case comes here on a demurrer to the complaint. One Grisco was the supervisor, and *ex officio*

the treasurer, of the town of Cicero, in Illinois.   He was
elected for the first time on April 4, 1905, for the term of
one year and until the election and qualification of a suc-
cessor.   By the town charter, the treasurer is required to
receive and hold the town's moneys, and to give a bond
in a form prescribed by law.   It is also declared to be his
duty " to keep a correct account of all moneys received
and paid out by him, and when required to furnish to the
board a statement of the moneys in his hands."   Follow-
ing Grisco's election in April, 1905, the defendant, Amer-
ican Surety Company, became surety for him in the sum
of $100,000.   The bond is dated April 25, 1905; it recites
that he was elected supervisor on April 4, 1905, for the
period of one year; and its condition reads as follows:
" Now, therefore, if the said Louis Grisco shall faithfully
account for all moneys that may come into his hands, as
such supervisor, and pay over the same pursuant to the
provisions of law or the order or resolution of the Board
of Trustees of the Town of Cicero, and shall faithfully
perform the duties of his office to the best of his skill and
abilities, then this obligation to be void, otherwise to
remain in full force and effect."

Grisco's first term expired on April 4, 1906, and he was
then re-elected for another year.   On April 16, 1906, he
gave another bond similar in form to the first one, with
the exception that the surety on the second bond was the
Metropolitan Surety Company and not the defendant.

Between April 4, 1905, and April 16, 1906, Grisco
deposited in the Lincoln Bank in Cicero moneys belong-
ing to the town amounting in the aggregate to $44,191.39.
He drew from the bank during that period only $2,661.61,
and these withdrawals were all made in May, 1905, the
second month of his term.   On April 16, 1906, when he
qualified for his second term, the amount supposed to be
on deposit in the bank was $41,529.78.   Between April
16, 1906, and December of the same year he made addi-
tional deposits of $12,061.13, and during the same period

drew from the bank only $100. There was thus a final balance for the two years of $53,490.91.

On December 17, 1906, the Lincoln Bank was adjudged a bankrupt. In reality, it had been insolvent for a long time. It was insolvent on April 16, 1906, when the Metropolitan Surety Company signed a bond for the second term. The allegation is that Grisco " did not then nor thereafter withdraw from the said Lincoln Bank any of the aforesaid balance of $41,529.78 which he had on deposit * * * at the conclusion of his previous term of office, * * * nor could the said balance have been withdrawn on account of the insolvency of said private banking institution as herein set forth." The allegation also is that he " did not and could not, on account of the aforesaid insolvency of the said private banking institution " pay over the said balance to himself as supervisor and treasurer. When Grisco's second term expired in April, 1907, demand was made by his successor for the payment of $53,490.91, but he " failed and neglected," so the complaint alleges, " to account for said $53,490.91 to the Town of Cicero, and failed to pay over said sum to his successor * * * as required by law." The town of Cicero then sued the Metropolitan Surety Company for $53,490.91 with interest. Included in this claim was the $41,529.78, deposited in the first term. The action was tried in Illinois, and after an appeal had been carried to the highest court of that state, the Metropolitan Surety Company, in obedience to the judgment of the court, paid to the town of Cicero $58,000. It thereupon received an assignment of the town's rights against the defendant, the American Surety Company, by reason of the latter's bond. On this state of facts the plaintiff, as receiver of the Metropolitan Surety Company, claims that the loss sustained during the first term should be borne by the two surety companies, and he brings this action to enforce an equitable contribution.

It is urged for the defendant that there has been no

default under the first bond. It is insisted that Grisco fulfilled the condition of the bond when acting as his own successor, he continued the account in the Lincoln Bank during his second term; and that thereafter the sole liability, not only for later deposits, but also for those made during the first term, devolved upon the second surety. We do not share that view. We think that to the extent of the loss suffered during the first term the defendant, as well as the second surety, was liable to the town; and that the second surety having discharged a debt for which the defendant was equally bound, is entitled, through the remedy of contribution, to enforce an equitable division. (*Barnes* v. *Cushing*, 168 N. Y. 542.) This must be so unless it can be said that Grisco has already satisfied the condition of the defendant's bond. We do not think he has. In our view he has neither accounted for the moneys that came into his hands during his first term nor paid them over pursuant to law.

It is important to bear in mind the nature of a public officer's liability for public moneys received by virtue of his office. His liability does not grow out of negligence. It is absolute, admitting of no excuse, except perhaps the act of God or the public enemy. (*Tillinghast* v. *Merrill*, 151 N. Y. 135, 142; *Smythe* v. *U. S.*, 188 U. S. 156.) If he puts the money in a safe and burglars break open the safe and steal the money, he is liable. If he puts it in a bank, and the bank loses it, he is liable. The allegation in this complaint is, in substance, that the Lincoln Bank lost the money, and lost it during the first term. At the end of that term it was no longer money in Grisco's hands; it was no longer money in bank; it, was merely a fictitious and misleading entry on a balance sheet. In these circumstances it is impossible to hold that Grisco accounted for the money by keeping his books as if he still held it. The fact is that he had already lost it, and he has never put it back. He may have been innocent of any willful wrong, but that does not absolve him. He may have

been ignorant of the loss, but that again does not absolve him. He did not account for the money by innocently carrying forward a fictitious balance any more than he would have accounted for it by carrying forward such a balance with guilty knowledge. It might as well be said that if he had put the money in a vault, and the vault was robbed without his knowledge, he could have discharged his first surety by reporting to the second surety that the money was intact. Before the first term was ended, the money had been lost, and something more than mere words was needed to restore it.

We do not mean to say that the plaintiff would establish a loss of the money during the first term by proof that the liabilities of the bank to all its depositors were in excess of its assets. That would not make out a present loss to this particular depositor. If the bank, though insolvent, was continuously engaged in business, responding to all demands, so that a check for the town's deposit would have been honored, the loss was not yet complete. But the allegations of the complaint show more than a deficit of aggregate assets as compared with aggregate liabilities. They show that by April, 1906, the deficit had progressed so far that the balance due to the town could not have been paid. This suffices, we think, to show that part at least of the loss had been then sustained. The form of the allegation is criticized, but we think it is proof against demurrer. The suggestion is made that even though the treasurer was unable to draw out the entire balance, he might, for all the complaint shows, have drawn out part of it. That is something which bears not so much on the right of recovery as on its extent. If the plaintiff has a right to recover anything, the complaint states a cause of action. The measure of the loss may be litigated hereafter.

It is argued, however, that if the first surety was liable to the town for the deposits lost during the first term, the second surety, on a proper construction of its bond, was

not; and that without identity of liability between sureties, the right to contribution fails. We think this argument as applied to the case at bar is without force. The second surety in paying this loss was not a volunteer. It resisted the town's suit and did not pay till its liability was adjudged. (*Town of Cicero* v. *Grisko*, 240 Ill. 220.) The adjudication seems to be in accord with the settled rule in Illinois. (*Morley* v. *Town of Metamora*, 78 Ill. 394; *Cowden* v. *Trustees of Schools*, 235 Ill. 604.) At all events, the second surety having discharged the defendant's liability not officiously, but under compulsion of law, has brought itself within the reason and the equity of the rule of contribution. (*Aspinwall* v. *Sacchi*, 57 N. Y. 331; *Pease* v. *Egan*, 131 N. Y. 262, 273.)

Our conclusion, therefore, is that the town treasurer did not account for the town's moneys and pay them over to his successor by taking office a second time and giving a new bond, and that to the extent that the moneys were lost during the first term the defendant continued liable.

The order should be affirmed, with costs, and the question certified answered in the affirmative.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CHASE, HOGAN and MILLER, JJ., concur.

Order affirmed.