In the Matter of PATRICK H. BIRD, Respondent, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Appellant.

Argued February 28, 1938; decided April 12, 1938.

*William C. Chanler,* Corporation Counsel (*Paxton Blair* and *Willard M. L. Robinson* of counsel), for appellant. The petitioner comes within the rule that public officials are insurers of the safe custody of public moneys collectible by them, and freedom from negligence is no defense. (*Board of Education* v. *Jewell,* 44 Minn. 427; *State* v. *Huxtable,* 178 Ark. 361; *Tillinghast* v. *Merrill,* 151 N. Y. 135; *City of New York* v. *Fox,* 232 N. Y. 167; *Union Bank & Trust Co.* v. *Los Angeles County,* 74 Pac. Rep. [2d] 240; *City of Duluth* v. *Ross,* 140 Minn. 161; *City of Chicago* v. *Southern Surety Co.,* 239 Ill. App. 628; *Yawger* v. *American Surety Co.,* 212 N. Y. 292; *United States* v. *Prescott,* 3 How. 578; *Smythe* v. *United States,* 188 U. S. 156; *Town of Mansfield* v. *Hanaford,* 250 Mass. 559; *State* v. *Nevin,* 19 Nev. 162; *McEachron* v. *New Providence,* 35 N. J. L. 528; *Commonwealth* v. *Comly,* 3 Penn. St. 372; *Forest County* v. *Poppy,* 193 Wis. 274.) Lack of control over the selection of subordinates does not excuse petitioner. (*Matter of Friedman* v. *Finegan,* 268 N. Y. 93; *Matter of Kraus* v. *Singstad,* 275 N. Y. 302; *Aversa* v. *Finegan,* 164 Misc. Rep. 162; 250 App. Div. 752; 275 N. Y. 512; *Bryan* v. *United States,* 90 Fed. Rep. 473; *U. S. Fidelity & Guaranty Co.* v. *United States,* 91 Fed. Rep. [2d] 848.)

*Daniel J. Mannix* for respondent. The alleged defense now relied upon is insufficient in law. (*United States* v. *Rogde,* 214 Fed. Rep. 283; *Dunlop* v. *Monroe,* 7 Cranch, 242; *Dowler* v. *Johnson,* 225 N. Y. 39; *Walsh* v. *Trustees,* 96 N. Y. 427; *Bieling* v. *City of Brooklyn,* 120 N. Y. 98; *Lloyd* v. *Mayer,* 5 N. Y. 369; *Donovan* v. *McAlpin,* 85 N. Y. 185; *Veatch* v. *Broderick,* 146 Misc. Rep. 848; *City of New York* v. *Fox,* 232 N. Y. 167; *Matter of Williams* v. *Darling,* 67 Misc. Rep. 205; *People ex rel. Conway* v. *Barker,* 14 Misc. Rep. 360; *United States* v. *Adams,* 54 Fed. Rep. [2d] 764; *Van Vorce* v. *Thomas,* 18 Cal. App. [2d] 723; *Zinkhan* v. *District of Columbia,* 271 Fed.

Rep. 542; *Great Northern Ins. Co.* v. *Young*, 32 Dominion Law Rep. 238; *Reum* v. *Rutherford*, 37 Dominion Law Rep. 715; *State of Alabama* v. *Kolb*, 78 So. Rep. 817.)

LEHMAN, J.   The petitioner, Patrick Bird, is the clerk of the Municipal Court of the City of New York, Borough of Manhattan, Third District.   The salary attached to that position is three thousand five hundred dollars per annum.   He has not been paid his salary for the four months from January to April, 1936.   The reason given by the Department of Finance of the city is that the Commissioner of Accounts reported to the Comptroller that an audit of the accounts of the petitioner showed " that fees amounting to the sum of $11,562.66 which were or should have been collected in petitioner's office during the period from April 27, 1926, to December 31, 1933, had not been accounted for and paid into the City Treasury by the clerk of the court."

The petitioner obtained an alternative order of mandamus which required the Comptroller to pay to the petitioner his salary or to show cause why such payment should not be made.   Upon the trial of the alternative order, it appeared that the petitioner had not been guilty of any personal delinquency, and had not failed to account for all fees or money which he had received personally.   No charges of wrongdoing were ever filed against him, and it does not appear that there has been even suspicion or whisper of wrongdoing on his part.   Much of the work of the office of clerk of the Municipal Court was performed by assistants and subordinates of the clerk.   The clerk had some power of direction and supervision of the work of the office, but he did not have power to choose or to remove the assistants and subordinates who performed much of that work.   They were required to collect and pay over fees fixed by law.   During the years from 1926 to 1935, fees amounting to nearly one million dollars were actually collected and paid over; but an audit made by accountants indicated that about $11,000 in addition, should have been collected and paid over.

The petitioner does not seriously challenge the existence of a shortage in the fees that should have been collected. A court interpreter, Othmar Schmidt, was occupied only a few hours a week by his court duties. At times when not so occupied he was directed to work in the " cage " where fees are paid, though he was not bonded like other assistants whose duty it was to handle public moneys. Schmidt has been convicted of forgery in the third degree, and though at this trial there was no attempt made to show that he has embezzled fees received by him and then by forgery concealed his embezzlement, yet it may fairly be inferred that he is responsible for some or all of the alleged shortage. That shortage, it is plain, consisted, in large part, of moneys actually collected for jury fees and other court fees, as shown by indorsements on court papers and documents, but which are not recorded in the cash book. In part, however, it may have been due to failure to collect fees fixed and exacted by law.

The Municipal Court Code, section 143 (Laws 1915, ch. 279, as amd. by Laws 1928, ch. 614), provides that the clerk of the Municipal Court in each district shall, among other things,

" 6. Assume charge and control of, and be responsible for, the general conduct of the business of his office and for the faithful discharge of the duties of the deputy and assistant clerks and other officers connected with the court.

" 7. Collect and receive all the fees, and account for and pay the same into the city treasury monthly, under oath, on the first day of each and every month or within three days thereafter, which account shall contain the title of each case and the amount of fees received therein; and the salary of such clerk shall not be paid until he shall have so accounted and paid. He shall perform no service until he shall have received the legal fees therefor."

At the trial held under the alternative order of mandamus, the trial judge charged the jury that the question for them to decide was whether the alleged shortage was

the result of any personal dereliction of the petitioner, either of commission or of omission; and that the petitioner could not be charged with responsibility for dereliction of an assistant or subordinate not chosen by him. The jury found in favor of the petitioner and upon its verdict a final peremptory order of mandamus which directed the Comptroller to pay to the petitioner the salary due to him, was granted at Special Term. The question to be decided upon this appeal is whether the law imposes upon the petitioner responsibility for any failure to collect, account for and pay over lawful fees regardless of whether or not such failure is due to dereliction on his part.

The measure of the liability of a public official, having custody of public moneys, for the loss of such moneys has long troubled the courts. In *Lane* v. *Cotton and Frankland* (1 Ld. Raymond, 646 [1701]) the court held, Sir JOHN HOLT, Ch. J., dissenting, that no personal liability exists except for personal misfeasance or neglect, and that a public officer may not be held responsible for misconduct of his subordinates. (Cf. *Whitfield* v. *Le Despencer*, Cowp. 754.) In *Supervisors of Albany County* v. *Dorr* (25 Wend. 440 [1841]) a similar question was presented, and the Supreme Court of the State, citing the English cases and some American authorities, judicial and extra-judicial, unanimously decided that liability of public officers for the loss of moneys in their custody is " brought down to the ordinary case of misfeasance or neglect by the defendants themselves in the duties of their office " (p. 442). An appeal was taken to the Court of Errors, and that court divided equally upon the question and a technical affirmance of the judgment of the Supreme Court resulted (7 Hill, 583).

The affirmance by an equally divided court was not regarded as an authoritative decision definitely settling the law. The question was still regarded as open until the decision of this court in *Tillinghast* v. *Merrill* (151

N. Y. 135) and in that case this court definitely overruled the decision in *Supervisors of Albany County* v. *Dorr* (*supra*) and held that the weight both of argument and of authority in America is in favor of the " rule of strict liability which requires a public official to assume all risks of loss and imposes upon him the duty to account as a debtor for the funds in his custody " (p. 142). The court there left open only the question of whether this " strict liability " would include a case where the funds are lost by the " act of God or the public enemy " (citing *United States* v. *Thomas*, 15 Wall. 337).

From the time when the courts were first called upon to determine the measure of liability of a public official for moneys in his custody, judges have recognized that choice of any rule must depend upon the weight to be given to conflicting considerations of public policy. The dissent of Sir JOHN HOLT from the early decision in *Lane* v. *Cotton and Frankland* (*supra*), that a postmaster is not responsible for money stolen or lost without his fault, was based upon the ground that a sound public policy dictated the rule of strict liability in order to prevent frauds. The choice made by this court of the rule of strict liability in *Tillinghast* v. *Merrill* (*supra*) was in large degree based upon similar views of public policy. " * * * we must consider and decide this question upon general principles and in the light of public policy * * * it shocks the sense of justice that the public official should be held to any greater liability than the old rule of the common law which exacted proof of misconduct or neglect.

" It is at this point, however, that the question of public policy presents, and it may well be asked whether it is not wiser to subject the custodian of the public moneys to the strictest liability, rather than open the door for the perpetration of fraud in numberless ways impossible of detection, thereby placing in jeopardy the enormous amount of the public funds constantly passing through the hands of disbursing agents " (p. 142).

There can be no doubt that the rule of strict liability for moneys *received* by a public official is in accord with the great weight of authority in this country. Indeed, the decisions, both Federal and State, are almost uniform. Many are cited in the opinion in *Tillinghast* v. *Merrill* (*supra*), and it would serve no useful purpose to add later citations which also support the rule. Even so, a careful analysis of recent decisions seems to indicate a growing sense of the injustice of imposing liability upon a public official without exacting proof of misconduct or negligence on his part, especially where loss is due solely to the dereliction of a subordinate who is not chosen by the official held liable. Though this court has reiterated the rule of a public officer's strict and almost absolute liability for public moneys received by virtue of his office (*Yawger* v. *American Surety Co.*, 212 N. Y. 292; *Trustees of Village of Bath* v. *McBride*, 219 N. Y. 92; *City of New York* v. *Fox*, 232 N. Y. 167), yet it may be noted that only in the last cited case did it appear that the loss was due to the dereliction of a subordinate and there the court pointed out that the subordinate was chosen by the official held liable.

Changing judicial views of public policy are an insecure basis for the extension or limitation of established rules of liability or for the rejection of a common law rule of liability and the formulation of a new rule. The judicial rule of liability, without fault, for the loss of public funds received by an officer, even if unduly harsh, is too well established to be changed by the courts. It is for the Legislature, not the courts, to change or limit the rule if such change seems wise. Even so, this court might hesitate to extend a rule (formulated by this court on grounds of public policy) which imposes upon public officers strict liability for loss of public moneys *received*, so that such liability would include also loss caused to the public by failure of a subordinate to *collect* public moneys.

No such question is, however, presented in this case. The petitioner's responsibility rests not upon a judicial rule of liability, but upon a rule of liability created by the Legislature. The statute in clear terms makes the petitioner " *responsible* for, the general conduct of the business of his office and *for the faithful discharge of the duties of the deputy and assistant clerks and other officers connected with the court.*" The statute, again, places upon the petitioner the duty to " collect and receive *all* the fees, and \* \* \* pay the same into the city treasury monthly." The petitioner through the dereliction of " officers connected with the court " has failed to collect and to pay over *all* the fees he was required to collect. A shortage exists, and under the statute the Comptroller was required to withhold the salary of the petitioner until he shall have accounted for and paid *all* the fees that were collected or that should have been collected. The courts may not exempt the petitioner from responsibility imposed by the Legislature. The statutory measure of responsibility is attached to the petitioner's office and accepted by him when he accepts the office.

That the liability of the petitioner is created and must be measured by the statute and not by the rule formulated by the court in *Tillinghast* v. *Merrill* (*supra*) appears clearly from the opinion in that case, and the explanation by the court of the earlier decisions of *Muzzy* v. *Shattuck* (1 Den. 233) and *People ex rel. Nash* v. *Faulkner* (107 N. Y. 477). Where, as in this case, there is a statute defining the duties and liabilities of a public officer, no consideration of public policy can properly induce a court to reject the statutory definition.

The orders should be reversed and the application of the petitioner denied, with costs in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur; RIPPEY, J., dissents.

Orders reversed, etc.