FRANK STANELEVITZ, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant, and CHARLES A. BUCKLEY, ÆTNA CASUALTY AND SURETY COMPANY and HARTFORD ACCIDENT AND INDEMNITY COMPANY. Impleaded Defendants.

City Court of New York, Special Term, Queens County, October 30, 1939.

*John Baehr*, for the plaintiff.

*William C. Chanler*, Corporation Counsel [*Bernard Newman* of counsel; *Seymour B. Quel* with him on the brief], for the defendant City of New York.

*Hyman Korn* [*Copal Mintz* of counsel], for the impleaded defendant Charles A. Buckley.

*Tibbets, Lewis, Lazo & Welch* [*George A. Dickinson* of counsel; *Murray D. Welch* with him on the brief], for the impleaded defendants Ætna Casualty and Surety Company and Hartford Accident and Indemnity Company.

WIENER, J.  On July 31, 1920, an order was made in the Supreme Court, Queens county, in an action pending in that court, wherein the present plaintiff as an infant was the plaintiff, and wherein one Myer Kraut was defendant.  Said order, so far as is here material, provided: " That the balance, the sum of $1,105, be deposited by the said guardian *ad litem* with the Chamberlain of The City of New York, and the said Chamberlain of The City of New York is hereby ordered to receive the said sum of $1,105 and to *retain the said money* for the benefit of the infant, Frank Stanelevitz, the *said money* being subject to the further order of this Court."  (Italics supplied.)

Thereafter and on or about August 10, 1920, there was duly deposited with the then chamberlain of the city of New York the sum of $1,105 mentioned in said order.

Subsequently and on July 16, 1924, the aforesaid sum, together with accrued interest (totaling $1,200), was invested by the then chamberlain in United States Treasury notes. This investment was thereafter redeemed at par on March 17, 1927. From the latter date until February 20, 1929, the moneys credited to the plaintiff's account were held in specie. On the latter date the infant's account in the office of the city chamberlain was credited with a $1,400 participating interest in a bond secured by a mortgage of $18,000.

This participation was allocated and credited to the infant plaintiff's account as an original investment and was not transferred from any other account.

The infant plaintiff attained his majority on April 20, 1938, and thereafter and on or about July 12, 1938, the successor of the chamberlain of the city of New York, the city treasurer of the city of New York, issued a certificate to the plaintiff, wherein he stated that there was on deposit with him as of July 12, 1938, to the credit of the plaintiff, the sum of $532.46 in cash, and the aforementioned $1,400 participating interest. Said certificate further stated that the said sum of $1,400 credited to plaintiff's account was invested in said bond and mortgage on February 20, 1929, by the then city chamberlain, the defendant Charles A. Buckley.

Thereafter and on or about August 4, 1938, the plaintiff, on notice to the defendant, The City of New York, applied in the Supreme Court, Queens county, for an order directing the chamberlain of the city of New York to pay to the plaintiff in cash the moneys *which should have been on deposit with him* to the credit of the infant plaintiff. An order was entered on August 10, 1938, granting said application in its entirety and directing the chamberlain of the city of New York and /or his successor, the city treasurer of the city of New York, to pay in cash to the plaintiff the sum of $1,932.46, with interest to the date of payment, less the city treasurer's lawful commissions.

Thereafter the plaintiff, his attorney, and the corporation counsel of the city of New York entered into a stipulation providing for the immediate payment to the plaintiff of " the sum of $532.46 in cash with interest to the date of payment * * * without prejudice to the rights of the plaintiff petitioner to further prosecute his claim to receive in cash immediately the balance of $1,400 on deposit with the Chamberlain of The City of New York." Hence, this action.

In his complaint the plaintiff sets forth the foregoing facts and demands judgment against the defendant, The City of New York, for the balance of $1,400. The defendant, The City of New York, has impleaded Charles A. Buckley, who was chamberlain of the

city of New York at the time that the infant's account was credited with the aforementioned $1,400 participation interest and has also impleaded the defendants Ætna Casualty and Surety Company and Hartford Accident and Indemnity Company, the sureties on the bond of the defendant Buckley at the time he was the chamberlain of the city of New York.

This motion is now brought by the plaintiff to strike out the defenses contained in the answer of the defendant, The City of New York, and for judgment on the pleadings in his favor under and pursuant to rule 112 of the Rules of Civil Practice. In turn, the defendant city has made a cross-motion " for an order granting summary judgment in favor of the city of New York as against the impleaded defendants Charles A. Buckley, Ætna Casualty and Surety Company and Hartford Accident and Indemnity Company pursuant to rule 113 of the Rules of Civil Practice in the event that the plaintiff's motion to strike out the defense of the city of New York and for summary judgment in favor of the plaintiff against the city of New York, is granted." Countering said motion by the city of New York, the defendant Buckley has moved for judgment on the pleadings in his favor " dismissing the cross-action of the city of New York " and also " for summary judgment in favor of the defendant Charles A. Buckley dismissing with costs the cross-complaint of the city of New York as against him." The surety companies defendant have also made a cross-motion " for summary judgment dismissing the cross complaint of the defendant, The City of New York, against said impleaded defendants." There is no disputed issue of fact raised by the plaintiff's complaint as against the city of New York, because the only material allegation of the complaint which is denied is paragraph " fifth " thereof, which alleges that the plaintiff became twenty-one years of age on April 20, 1938. This denial is, in effect, withdrawn in the city's memorandum, and in any event is rendered futile by the fact that the city conceded that the plaintiff attained his majority when it entered into the aforementioned stipulation to pay over to him the uninvested portion of the moneys standing to his credit on its books. Thus, the only existing issue between the plaintiff and the city of New York arises by reason of the allegations contained in the affirmative and complete defense in the city's answer. In substance, this defense is that the " investment in said bond and mortgage was in all respects a due and proper one and constituted a proper and legal investment for trust funds under the laws of the State of New York."

Thus, as between the plaintiff and the city the sole issue is whether the then city chamberlain had a right to invest the money held to

the infant plaintiff's credit, or whether he was bound to keep it in a liquid state by depositing it in a bank or trust company.   In *Schmidt* v. *Chamberlain of City of New York* (266 N. Y. 225) the order of deposit with the chamberlain provided: " and that the said special guardian pay the balance remaining in his hands to the Chamberlain of The City of New York to the credit of the infant herein, Elizabeth Schmidt, *to be held by said Chamberlain* of The City of New York *until the further order of this court herein.*"   (Italics supplied.)

In that case, too, the chamberlain invested the infant's funds in a certificated mortgage issue, and when the plaintiff, upon attaining her majority, sought the funds, the certificates were tendered to her instead.   In passing upon the effect of the order in that case, the pertinent provisions of which have hereinabove been quoted, the Court of Appeals said (at p. 228): " Subsequent to the deposit of the fund under the order above referred to, neither the County Court nor the Supreme Court entered any further order relating to the fund until January 28, 1934, when upon the application of the applicant, who had attained her majority, an *ex parte* order was made by the Supreme Court, Kings county, directing the Chamberlain to pay to her $2,092.09 in cash, that being the amount originally deposited to her credit together with interest.   *The Chamberlain refused to pay the same, on the ground that he had invested $2,000 thereof in mortgage participation certificates which had depreciated in value, but offered to pay the balance not so invested ($92.09) and to consent to an order directing him to transfer to the applicant such certificates.*   It had been customary for the Chamberlain's office to make payment in cash of amounts which had been invested by transferring the investment in any fund directed to be paid to some other fund, but the Chamberlain refused to do this for the applicant because of the depreciated value of her certificates.   The applicant does not question the propriety of the refusal of the Chamberlain to make payment to her by transferring the investment to some other fund, but she *contends that the investment made of the money held for her was illegal because no court order directing such an investment had been made, as was provided for in the Civil Practice Act (§ 136).*

" The Chamberlain maintains that such an order was unnecessary since the investment was made in accordance with and in reliance on section 44-c of the State Finance Law, as amended by Laws of 1928 (chap. 837), which provides as follows:

" ' § 44-c.   Deposit of funds or money paid into court; investment.   All funds or moneys paid into court shall be deposited in such savings bank, trust company, bank, banking association or with such banker, as shall be designated by the State Comptroller, as soon as received by the custodian thereof.   But the money must

be deposited in the county where the fund belongs, where it can be done conveniently and safely and with advantage to the parties interested. *All moneys so paid into court may be invested by the several county treasurers and in the city of New York by the chamberlain, without a specific direction of the court having jurisdiction, in securities that are legal investments for trustees, when the said county treasurers or chamberlain deem it for the best interests of the funds to make such investments.*' (Italicized portion of the quotation added by the amendment.) * * *

" Our decision must rest on the ground that the amendment to section 44-c applies to moneys paid into court ' without a specific direction of the court having jurisdiction.' *The order in question specifically provides that the money is to be held by the Chamberlain ' until the further order of this court herein.'* The language used in the order clearly shows that the court intended that the money be held readily available for disposition in the manner to be determined by the court. To hold that this phraseology is not a specific direction would be to disregard the clear language of the order. So to do would make it necessary for a court expressly to negative the provisions of the statute in order to escape its application. This would cast an unusual and an unreasonable burden on the court. The amendment to section 44-c not applying, the Chamberlain had authority to invest the money only under direction of the court, embodied in an order or decree. (Civ. Prac. Act, § 136.) Until such order was made, the money should have been deposited in a ' savings bank, trust company, bank, banking association or with * * * banker designated by the State Comptroller.' (State Finance Law, § 44-c.)'' (Italics supplied.)

Thus, in the case cited it was held that the investment was improper, because the order provided for the moneys " to be *held* by said Chamberlain.'' In this case, assuming section 44-c of the State Finance Law to be applicable, and it should be noted that in its present form it did not come into existence until *1928*, whereas the order subject to interpretation herein was made on July 31, *1920*, the order also provides for the *holding* of the money by the city chamberlain, for it is specific in its statement that the " Chamberlain is to *retain* the said money,'' " the said *money* being subject to the further order of this court.'' No distinction exists between the *Schmidt* order and the order in this case. If anything, the provision for the retention or the holding of the money intact, and without investment, is more precise and specific here than it was in the *Schmidt* case. Under the circumstances, the later determination of the Court of Appeals in *Gerschon* v. *Travelers Insurance Co.* (276 N. Y. 53) is inapplicable, for there there was no provision in

the order providing for the retention, or the holding by the city chamberlain of the funds in their uninvested state. In explaining its previous decision in the *Schmidt* case (*supra*) the Court of Appeals in the *Gerschon* case said (at p. 58):

"In interpreting that order we construed the word 'held' as indicating that the court intended that the money be held readily available for distribution in the manner to be determined by the court.

"The order here involved does not contain the word 'held' *or equivalent direction as to the disposition of the moneys.*" (Italics supplied.)

The order in this case contains the word "retain," which is the "equivalent direction" of the word "held" which the Court of Appeals spoke about in the *Gerschon* case (*supra*). The plaintiff having had a right under the terms of the order to have his fund unimpaired by investment is, therefore, entitled to the granting of his motion against the city of New York.

In opposing the cross-motion by the city of New York as against him, the impleaded defendant Buckley contends that in truth and in fact the allocation to the infant plaintiff's account of a $1,400 participation interest in the aforementioned bond and mortgage was not an investment, but was merely a bookkeeping entry. In explaining this contention, the defendant Buckley states:

"For many years, probably since shortly after 1848, when the Chamberlain's office first became depository for monies paid into court, the practice was as follows: The Chamberlain owned and held a number of bonds and mortgages or other investments, such as New York City corporate stock, United States bonds or treasury notes, etc. Interests in these, by bookkeeping entries, were distributed among the various accounts. When a deposit was ordered to be repaid, whatever interests in bonds and mortgages then stood to the credit of that account were transferred to other accounts, and the full amount of cash (Consisting of the principal amount deposited together with the interest credited to the account as the result of the mortgage allocations, less fees) was paid in cash. In that way, allocations of interests in bonds and mortgages were shifted from account to account by entries in the Bond and Mortgage Register or other books kept in the office and corresponding entries in the respective deposit accounts. The owner of the deposit was never advised of the allocations and was believed to be not concerned for he was, at the proper time, paid in cash the full amount deposited plus interest, and the allocations to his account of participations in bond and mortgages served merely to fix the income credited to the account. Indeed, *certificates issued to deposit owners ignored such allocations and certified the amount as being held in cash.*

" The foregoing practice was continued during my incumbency of the office of Chamberlain and by my immediate successor."

It is upon the foregoing facts that the defendant Buckley rests his claim that no investment was in fact made of the infant's funds. A comprehensive discussion of this contention and a very clear explanation of the operations in the office of the city chamberlain is found in a learned opinion written by Mr. Justice HAMMER in the case of *City of New York* v. *Buckley* (N. Y. L. J. Sept. 17, 1936, p. 719). After carefully considering the method of procedure followed in the city chamberlain's office, Mr. Justice HAMMER held that the allocation of an interest in a bond or mortgage to the account of an infant plaintiff, where there was no specific provision in the order of deposit for the purchase of such an interest, amounted to a mere bookkeeping allotment and that the error of bookkeeping could be corrected by appropriate entries where, under the terms of the deposit with the chamberlain, the latter had no authority to invest the infant's funds. As a result, the learned justice rendered judgment for the defendants in that case. In a subsequent action (*City of New York* v. *Buckley*, N. Y. L. J. July 1, 1939, p. 7) Mr. Justice SHIENTAG came to a directly opposite conclusion. In determining that the allocation upon the books of the chamberlain constituted an investment and not a mere bookkeeping entry, Mr. Justice SHIENTAG said: " My conclusions in this case are as follows: 1. The defendant Buckley, as city chamberlain, invested in mortgages on real property the funds deposited with him to the credit of the Kingsland estate pursuant to order of the Surrogate's Court. The dictum of my learned brother in another case, to the effect that a substantially similar transaction did not constitute an investment, while entitled to great respect, is not here controlling (*City of New York* v. *Buckley*, N. Y. L. J. Sept. 17, 1936, p. 719). Here the funds were withdrawn from the bank in which they had been deposited by the chamberlain when they were received by him, and in effect the Kingsland estate was credited on the books with an interest in mortgages taken over for the benefit of that estate. While the moneys were deposited in the bank, the account was credited with bank interest. *When the moneys were allocated to a particular mortgage the account was credited with whatever rate of interest that mortgage paid. The transactions are wholly inconsistent with the theory of a general revolving fund. They are consistent only with being separate investments for each account.* 2. The order of deposit of the Surrogate's Court did not permit the investment of the funds. It required them to be held by the chamberlain for the benefit of the persons designated, to be paid out on order of the court. This case, therefore, would seem to come within the rule laid down in *Matter of Schmidt* v.

*Chamberlain* (266 N. Y. 225) rather than the decision in *Gerschon* v. *Travelers Ins. Co.* (276 N. Y. 53). (See *Stemmler* v. *Lillie*, 255 App. Div. 757.)" (Italics supplied.)

I am inclined to follow the determination of Mr. Justice SHIENTAG in holding that *the crediting of the account with the rate of interest paid in the bond and mortgage* makes the transaction one which is wholly inconsistent with a mere bookkeeping entry. To adopt the theory of a revolving fund advanced by the defendant Buckley, would mean that in all cases depositors who were credited with or paid interest upon the bonds and mortgages allocated to them (which interest in most cases was greater than bank interest) were overpaid by each city chamberlain who paid out the funds in question. To be consistent, it would be necessary for the defendant Buckley to contend that in all cases where he, as city chamberlain, paid out moneys to infants upon attaining their majority he should have merely credited them with bank interest and not given them the greater amount of interest called for by the bond and mortgage allocated to them. It is admitted that this was not done, for the defendant Buckley in his affidavit tells us that " When a deposit was ordered to be repaid, whatever interest in bonds and mortgages then stood to the credit of that account were transferred to other accounts, *and the full amount of cash (consisting of the principal amount deposited together with the interest credited to the account as the result of the mortgage allocations, less fees) was paid in cash.*"

The contention of the defendant Buckley (and of the surety companies) that there was no *investment*, but merely an arbitrary bookkeeping entry, must, therefore, be overruled.

The defendant Buckley's next contention is that he was not *personally* responsible for the acts in this case; that the same were committed by other persons in the employ of the city of New York and that, therefore, he cannot be chargeable therewith. To hold the defendant Buckley personally liable for acts committed by a subordinate employee, which acts in no wise involved bad faith, fraudulent intent or improper motives, would at first blush seem to be shocking. Yet the rule of strict liability for moneys *received* by public officials seems strongly ingrained in our law. In so holding, the Court of Appeals, in *Matter of Bird* v. *McGoldrick* (277 N. Y. 492), said (at p. 499):

" There can be no doubt that the rule of strict liability for moneys *received* by a public official is in accord with the great weight of authority in this country. Indeed, the decisions, both Federal and State, are almost uniform. Many are cited in the opinion of *Tillinghast* v. *Merrill* (*supra*), and it would serve no useful purpose to add later citations which also support the rule. Even so, a

careful analysis of recent decisions seems to indicate a growing sense of the injustice of imposing liability upon a public official without exacting proof of misconduct or negligence on his part, especially where loss is due solely to the dereliction of a subordinate who is not chosen by the official held liable. Though this court has reiterated the rule of a public officer's strict and almost absolute liability for public moneys received by virtue of his office (*Yawger* v. *American Surety Co.*, 212 N. Y. 292; *Trustees of Village of Bath* v. *McBride*, 219 N. Y. 92; *City of New York* v. *Fox*, 232 N. Y. 167), yet it may be noted that only in the last cited case did it appear that the loss was due to the dereliction of a subordinate and there the court pointed out that the subordinate was chosen by the official held liable.

" Changing judicial views of public policy are an insecure basis for the extension or limitation of established rules of liability or for the rejection of a common-law rule of liability and the formulation of a new rule. *The judicial rule of liability, without fault, for the loss of public funds received by an officer, even if unduly harsh, is too well established to be changed by the courts. It is for the Legislature, not the courts, to change or limit the rule if such change seems wise.*" (Italics supplied.)

Thus, despite the fact that the defendant Buckley may not even have known of the existence of the order in this case, his liability seems clear under the authorities.

The defendant Buckley next contends that he acted in reliance upon the advice of the corporation counsel, contained in a written opinion rendered to one of his predecessors in office. However, one acts upon the advice of one's lawyer, even if he be the corporation counsel, at his own peril. If his lawyer gives him improper or incorrect advice, the liability which flows from accepting the same must necessarily fall upon him, and the city may not be estopped by the advice thus given. (*New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *New York Telephone Co.* v. *Board of Education*, 270 id. 111.) The other contentions raised by the defendant Buckley have been carefully considered and have been found to be without merit.

Aside from advancing all of the objections and contentions interposed by the defendant Buckley, the surety companies defendant also raise the contention that they may in no event be held liable herein upon their bond, which provides that Buckley shall faithfully perform the duties devolved upon him in the said position of city chamberlain and all terms imposed upon him by law by virtue of his office and shall promptly account for and pay over all money as such city chamberlain. It is contended " that Buckley

faithfully performed his duties, that he was guilty of no breach of faith or of trust, and that he duly and properly accounted for all funds in his hands upon the termination of his term," and that, therefore, there is no liability upon the part of the surety companies upon his bond. If we are correct in holding the defendant Buckley liable herein, it is because he has affirmatively violated the terms of the order of deposit by making an investment in contravention of the terms thereof. In so doing, although innocent of personal wrong, he did not "faithfully perform the duties devolved upon him," with the result that not alone is he personally liable but the sureties upon his bond as well.

Plaintiff's motion to strike out the defense contained in the answer of the defendant, The City of New York, and for judgment on the pleadings in his favor as against the city of New York, is in all respects granted. The motion of the city of New York for summary judgment against the impleaded defendants Charles A. Buckley, Ætna Casualty and Surety Company and Hartford Accident and Indemnity Company is in all respects granted. The cross-motions of the impleaded defendants are in all respects denied. Ten days' stay of execution after the entry of judgment herein. Settle order on notice.