LOUGHMAN v. TOWN OF PELHAM, WESTCHESTER COUNTY, N. Y. (EM- PLOYERS' LIABILITY ASSUR. CORPO- RATION, Limited, Third-Party Defendant).

No. 43.

Circuit Court of Appeals, Second Circuit.

Nov. 29, 1943.

(1) to disburse the school moneys in his hands, applicable to the payment of teachers' wages, upon and only upon the written orders of a sole trustee, or a majority of the trustees, in favor of qualified teachers. * * *' 2 Rev.St. (8th Ed.) p. 1283, § 6. By paragraph 8 of the same section a supervisor is required to pay to his successor all school moneys remaining in his hands.[2] In this statute it will be observed that there are no explicit declarations of the legislative intent, as in the case of town collectors, to create a supervisor the debtor of the county for public moneys in his hands, and the condition of the bond to safely keep, faithfully disburse, and justly account for the same[3] does not add to the liability created by statute." The court went on to say that it decided the question "upon general principles, and in the light of public policy."

Whitman, Ranson, Coulson & Goetz, of New York City (William L. Ranson and Forbes D. Shaw, both of New York City, of counsel), for appellant.

Conklin & Bentley, of New York City (Edward S. Bentley, of New York City, of counsel), for appellee.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

As Judge Conger explained in his excellent opinion, were it not for § 149-c, without doubt appellee would be liable to appellant for the net loss resulting from the bank's failure, in accordance with Tillinghast v. Merrill, 1896, 151 N.Y. 135, 45 N.E. 375, 376, 34 L.R.A. 678, 56 Am.St.Rep. 612. There the court held, in an action by the county treasurer, that the Supervisor of a town was liable as "an absolute debtor" to the county for loss of school funds through failure of a bank in which he deposited them, although he was guilty of no fault or negligence. The court said: "In the case at bar, the defendant Merrill is sought to be held liable for school moneys paid to him by the county treasurer, to disburse in payment of the salaries of school teachers upon the orders of the trustees. The statute imposing this duty reads as follows, viz.: 'It is the duty of every supervisor

 As in Tillinghast v. Merrill, so in the case at bar, "there are no explicit declarations of the legislative intent * * * to create a supervisor the debtor * * * for public moneys in his hands." It would seem that here, as there, legislative intention cannot be derived from the required terms of the Supervisor's bond, and that therefore decision must rest on considerations of public policy. Such a view is confirmed by Bird v. McGoldrick, 277 N.Y. 492, 14 N.E.2d 805, 807, 116 A.L.R. 1059. There a statute expressly provided that the clerk of the Municipal court of New York City must "Assume charge and control of, and be responsible for, the general conduct of the business of his office and for the faithful discharge of the duties of the deputy and assistant clerks and other officers connected with the court." New York City Municipal Court Code, § 143. The court, noting the harshness of the result, reluctantly held the clerk liable for moneys misappropriated by one of his deputies, although the clerk had had no power to choose or to remove that deputy. In so holding, the court said: *"The petitioner's responsibility rests not upon a judicial rule of liability, but upon a rule of liability created by the Legislature. * * * That the liability of the* petitioner *is created and must be measured by the statute, and not by the rule formulated by*

---

[2] It will be observed that this requirement is virtually the same as that of the Supervisor here who, under § 149-c "shall demand, collect, receive and have the care and custody of, * * * all moneys belonging to or due the town * * *".

[3] These are virtually the same terms as those of the Supervisor's bond here.

*the court in Tillinghast v. Merrill, supra, appears clearly from the opinion in that case,* and the explanation by the court of the earlier decisions of Muzzy v. Shattuck, 1 Den., N.Y., 233 and People ex rel. Nash v. Faulkner, 107 N.Y. 477, 14 N.E. 415. *Where, as in this case, there is a statute defining the duties and liabilities of a public officer, no consideration of public policy can properly induce a court to reject the statutory definition."* [4]

■ Since in the case at bar there is no such explicit statutory provision as was before the court in Bird v. McGoldrick, supra, but only such statutory obligations as were imposed upon the Supervisor in the Tillinghast case, it would be rational to assume that, when such a Supervisor is restricted in his use of the Town's funds and required to make deposits in some particular bank designated by an official body and not by himself, his absolute liability, flowing from his position as a debtor unrestricted in his use of the funds, will correspondingly disappear. And so the New York courts have said.

In Trustees of Village of Bath. v. McBride, 163 App.Div. 714, 148 N.Y.S. 836, 840, the court held the Village could not recover on the official bond of the village treasurer for moneys lost through the failure of a bank in which the treasurer had deposited village funds because—so the court found as a fact—the Village Board of Trustees had, by resolution, designated that bank as depositary of such funds and the Village of Bath was within the provisions of a statute authorizing such designation. On appeal, of Trustees Village of Bath v. McBride, 219 N.Y. 92, 113 N.E. 789, 790, the Court of Appeals reversed, but on the ground that, even if the statute authorized such a designation, the finding of fact that the Board had made one was unsupported by the evidence; the court said, "Assuming that the board of trustees had power to designate a depository of village money and power to require the treasurer to deposit the money according to such designation, they did not exercise that power."

In City of Newburgh v. Dickey, 164 App.Div. 791, 150 N.Y.S. 175, 178, the City Council had passed a resolution designating a certain bank as the depositary of City funds and directing the Treasurer to deposit those funds in that bank. The treasurer, having refused to comply with the resolution, the City sought mandamus to compel him to do so. The court found that the City charter, by implication, conferred on the Council the power to pass such a resolution. The Treasurer contended that, as the charter obligated him to give a bond for the faithful discharge of the duties of his office and pay over all moneys received by him, he was responsible as insurer for the deposits and must therefore be permitted to select the depositary. The court granted the mandamus saying: "It is the settled law of this state that a public official assumes all risk of loss and is charged with the duty to account as a debtor for the funds in his custody. Tillinghast v. Merrill, 151 N.Y. 135, 142, 45 N.E. 375, 34 L.R.A. 678, 56 Am.St.Rep. 612. But in that case the court say that they do not wish to be understood as establishing a rule of absolute liability in any event. Neither the requirement of this bond nor the general rule would extend to moneys received by the official, while those moneys were held by a depositary designated by another body or officer of the city in accord with law and exclusive of any power cast upon him. Dillon on Municipal Corp. (5th Ed.) p. 764, citing Perley v. Muskegon County, 32 Mich. 132, 20 Am.Rep. 637. See, too, Mechem on Public Officers, p. 610; Hobbs v. United States, 17 Ct. Cl. 189. The condition of the bond would be met if he discharged his duty with respect to the moneys when not in the exclusive charge of the depositary named by the city council."

A similar question arose in People ex rel. Glens Falls Trust Co. v. Reoux, 60 Misc. 139, 112 N.Y.S. 1025, 1027.[5] There the court refused to mandamus a county treasurer to deposit in accordance with a resolution of the County Board of Trustees because the statute did not authorize such a resolution. In a dictum the court said: "By section 145 of the county law, the county treasurer is not released from liability to the county for moneys deposited, but the default of the depositary is deemed the default of the treasurer. If the contention prevails that the treasurer submit to the directions of the board of supervisors in the selection of a depositary, then the treasurer is responsible for the default of one he did not select. It cannot be sup-

---

[4] Italics added.

[5] Affirmed without opinion, 128 App. Div. 933, 113 N.Y.S. 1142.

posed that the law contemplated any such result."

The New York courts, then, have indicated, whenever the question has arisen that, where the designation of the depositary is lawfully taken out of the hands of an official who would otherwise have been absolutely responsible therefor under the rule of the Tillinghast case, that rule is no longer effective.

■ Appellant, however, pointing to the "savings clause" contained in § 149-e of Article VI-A, asserts that § 149-c of that Article did not repeal or modify § 100 because that section is not inconsistent with § 149-c, and that therefore the Supervisor, despite § 149-c, still remains liable under the Tillinghast rule. We cannot agree. The liability of the Supervisor in that case, as above noted, did not derive from the fact that he was obliged to give a bond substantially similar to that required of the Supervisor in the case at bar pursuant to § 100. That section was intended merely to ensure that the obligations of the Supervisor, existing apart from the terms of that bond, should be secured by a sufficient surety. It is significant that the bond of the treasurer in the *City of Newburgh case was substantially the same as that required by* § 100. Moreover, if it could be said that § 100 itself imposed an absolute obligation similar to that already existing apart from the bond required thereby, then (as indicated by the Newburgh and Bath cases, supra) § 100 was pro tanto inconsistent with § 149-c and was, pro tanto, repealed thereby. We say "pro tanto" because the Supervisor, despite § 149-c, was presumably still liable in a variety of circumstances—as, for instance, for funds before they were deposited in any designated bank or after they were withdrawn therefrom, or if the Supervisor deposited in a bank not designated, or if the Board failed to designate any depositary.[6]

Appellant also refers to § 101 of the Town Law, enacted at a time when no statute authorized a town board to designate depositaries; that section permitted (but did not require) the Supervisor to purchase, at the expense of the town, a surety bond "securing to such supervisor

the safety of town funds deposited by him in any bank or banking institution in this state, and indemnifying him against the loss through the failure or insolvency of such bank." Appellant asserts that § 149-c, subsequently enacted, is not inconsistent with, and consequently did not repeal, § 101, and that the legislature, by not repealing it, "recognized" that the Supervisor was still to be liable for all deposits even if made in a bank designated pursuant to § 149-c. For, says appellant, the legislature would not have retained a statute permitting a Supervisor to buy a bond at the town's expense to protect him against liabilities which could never occur. Not only does this argument beg the question as to "inconsistency," but, more important, it neglects the fact that there was good reason for retaining § 101 after the enactment of § 149-c, since the latter section did not apply to the Supervisors of many of the towns of the State. It is significant that when, subsequently, by the statute known as the New Town Law which became operative in 1934, Supervisors of all towns were relieved of liability for deposits in designated banks, § 101 was expressly repealed.[7]

■■ We regard as irrelevant the fact that it was at the request of the surety company, appellee, that the ultra vires pledge of securities was made by the Pelham National Bank to protect the deposits of funds with it; that fact cannot be said to constitute an admission by appellee that the Supervisor was an insurer of the funds in that bank, especially as no such pledge was exacted from the other two banks named as depositaries, although the Supervisor deposited some of the town's funds in one of those other two banks. Nor is it relevant that the resolution of the board designating the depositaries was adopted on McCormick's motion, for the resolution was not his act but that of the entire board. No more pertinent is the fact that the resolution gave the Supervisor the power to deposit in one or more of three depositaries.

■ Appellant makes much of the fact that by statutory changes which went into effect in 1934 and thereafter, the legis-

[6] Since 1934, the Supervisor, by explicit statutory provision contained in the so-called New Town Law, is released from liability for any loss due to the default of a designated depositary; yet, by § 25 of the New Town Law, he is still required to give a surety bond in substantially the same wording as that which was theretofore required by § 100.

[7] For such repeal see § 340 of the New Town Law.

lature expressly provided for the exemption of a Supervisor and his sureties from liability for the loss of funds due to a default of a depositary designated by the town board; appellant suggests that this explicit enactment shows that prior thereto such liability existed. That type of argument is always unsatisfactory. At times, legislation expressly fixing rights and obligations may serve as a make-weight in interpreting earlier legislation as not intended to include any such rights or obligations; but such a canon of interpretation should always be cautiously employed. It is peculiarly lacking in pertinence here where the more recent legislation was obviously designed as a codification of previous piece-meal legislation and was enacted with the intention of embodying in one statute a legislative scheme pertaining to political subdivisions of the state, many of which had not been covered by much of the earlier scattered legislation.[8]

Affirmed.

SWAN, Circuit Judge (dissenting).

Under the rule of Tillinghast v. Merrill, 151 N.Y. 135, 45 N.E. 375, 34 L.R.A. 678, 56 Am.St.Rep. 612, a town supervisor was absolutely liable to account for moneys collected by virtue of his office. It was no excuse that he had deposited them in a bank if the bank failed. Yawger v. American Surety Co., 212 N.Y. 292, 297, 106 N.E. 64, L.R.A.1915D, 481. The Town Law of 1909 recognized such absolute liability by requiring a supervisor to give a surety bond to "well and truly keep, pay over and account for all moneys * * * belonging to his town and coming into his hands as such supervisor". Section 100, Ch. 63, Laws of 1909. The Town Law also recognized the desirability of ameliorating the severity of this rule in case town funds were lost through failure of the bank in which the supervisor had deposited them. Section 101, Ch. 63, Laws of 1909. This section authorized the supervisor to purchase at the town's expense a surety bond "securing to such supervisor the safety of town funds deposited by him" in any bank within the state, and "indemnifying him against the loss thereof through the failure or insolvency

of such bank." Thus the legislative plan was to hold the supervisor absolutely liable but to allow him at the town's expense to protect himself against loss resulting from failure of the bank in which he had deposited town funds. There was no statutory requirement that town funds be deposited in a bank. Such requirement came into the legislative plan by Chapter 396 of the Laws of 1916 which amended the Town Law of 1909 by adding Article VI-A. Section 149-c of Article VI-A, so far as relevant, reads as follows: "§ 149-c. Duties of supervisors. The supervisor of any such town shall demand, collect, receive and have the care and custody of, and shall disburse all moneys belonging to or due the town from every source, except as otherwise provided by law. All moneys of the town received by the supervisor shall be deposited by him in such bank, banks or trust companies as shall be designated by the town board for such purpose. * * *"

My brothers are of opinion that the duty imposed by the second sentence above quoted impliedly relieves the supervisor of his absolute liability to account for town funds lost through the failure of a depositary bank designated by the town board, despite the affirmation in the first sentence that the supervisor shall "have the care and custody" of moneys belonging to the town and despite the saving clause in section 149-e to the effect that nothing in Article VI-A shall be construed to repeal any statute not inconsistent with the provisions of this article. I am unable to agree. I see no necessary inconsistency between requiring an official to deposit funds in a bank designated by other officers and requiring him to account if the deposited funds are lost. His two duties may appear to operate harshly but they are not inconsistent duties. Even the harshness is more apparent than real since section 101 allows the supervisor to protect himself, unless that section also be impliedly repealed. The principle of absolute liability has had so long a legislative recognition and has become so firmly entrenched in the case law of New York that I believe an express legislative mandate is required to get rid of it. In Trustees of

---

[8] Our conclusions make it unnecessary to consider whether retroactive effect should be given in the instant case to the 1937 amendment of the Town Law, § 64, subd. 1 (Laws of 1937, Ch. 468) that "all acts done prior to the effective date of this section which would have been valid hereunder are hereby validated."

Village of Bath v. McBride, 219 N.Y. 92, 97, 113 N.E. 789, 790, the court remarked, "The rule of strict liability laid down in Tillinghast v. Merrill, supra, is a very important one, and it should not be frittered away in seeking to give relief in hard cases." Nor, in my opinion, should it be abolished by an implication derived from section 149-c which is not plainly inconsistent with a continuance of the supervisor's absolute liability. Moreover, I think it not without significance that when the new Town Law, effective in 1934, was enacted, the legislature not only expressly relieved the supervisor from absolute liability, but at the same time required him to procure a bond or take other security to protect the town against loss resulting from a failure of a bank in which town funds were on deposit. See sections 29(2), 29(6), 64(1), Chap. 634, Laws of 1932. Compare Pyrke v. Standard Accident Insurance Co., 144 Misc. 53, 57, 258 N.Y.S. 869, affirmed sub nom. Baldwin v. Standard Accident Insurance Co., 237 App.Div. 334, 261 N.Y.S. 507, affirmed 262 N.Y. 575, 188 N.E. 71. I believe the judgment should be reversed.